[Tennessee Coal, Iron & Railroad Co. v. The State.]

# Tennessee Coal, Iron and Railroad Co. v. The State.

*Proceedings to Increase Assessed Valuation of Lands for Taxation.*

1. *Proceedings to increase assessment of lands; power of commissioner's court.*—In a proceeding instituted by a tax commissioner before the court of county commissioners for the purpose of increasing the valuation of lands from that fixed in the assessment made by the tax assessor, such commissioner's court is not limited to the valuation as fixed by the tax commissioner, but are required to determine and fix said valuation at such sum as the. evidence before it shows to be a fair market or real value of said lands, without reference to whether such valuation is less or greater than that suggested by the tax commissioner.

2. *Same; right of state on appeal to claim a higher valuation than tax commissioner fixed.*—On an appeal from the order of the court of county commissioners fixing a valuation of lands for taxation in a proceeding instituted for the purpose of increasing the assessed valuation of said lands, it is competent for the state to file a declaration claiming, and to show, that the true value of the lands in question was not only greater than that returned for taxation to the assessor, but was also greater than that claimed by the tax commissioner and found by the commissioner's court; and such proceeding on appeal being tried *de novo*, it is the duty of the circuit court to fix the fair market or real value of the property alone according to the evidence adduced before it.

3. *Proceeding to increase valuation of property assessed for taxation; not necessary to have an assessment made by a tax commissioner.*—In a proceeding instituted by a tax commissioner of a county to raise the valuation of lands assessed for taxation because they were undervalued, it is not necessary to support such proceeding that there should be a new assessment made by the tax commissioner.

4. *Proceeding to increase valuation of lands assessed for taxation; admissibility of evidence as to value of adjoining lands.*—In a proceeding to increase the valuation of lands assessed for taxation, prices at which adjoining lands of the same kind

and quality as those involved in the proceeding have been sold during or near to the time covered by the assessment, may be proved.

5. *Same; same.*—In such a proceeding, it is not competent to prove at what price an offer was made to buy adjoining land of the same kind and quality.

6. *Same; same.*—In such a case where the lands involved in the proceedings are coal lands, and no evidence has been adduced going to show what is the fair market or real value of lands which have been leased at a certain royalty on coal mined therefrom, testimony of a witness that he had leased lands in the vicinity of the lands involved in the controversy and of like quality at a certain price per ton royalty, is incompetent and inadmissible.

APPEAL from the Circuit Court of Shelby.

Tried before the HON. JOHN PELHAM.

The proceedings in this case were instituted by the tax commissioner of Shelby county before the court of county commissioners of said county, to raise the valuation of 23,818 acres of land owned by the Tennessee Coal, Iron & Railroad Co., as assessed to said company by the tax assessor, because of an alleged undervaluation of said lands. The lands were assessed at a valuation of $71,455.00. The tax commissioner sought to raise the valuation of said lands to $95,252.00, being an increase in valuation of $1.00 per acre. On the hearing of the cause the court of county commissioners sustained the assessment as fixed by the tax commissioner, and ordered the assessment by the tax assessor increased to the valuation as fixed by the tax commissioner. From this order of the Commissioners' court the Tennessee Coal, Iron & Railroad Co. appealed to the circuit court of Shelby county.

When the cause came on for hearing in the circuit court the State filed a declaration through its solicitor, asking that the valuation of said lands as assessed by the tax assessor be increased to $142,910.00. Respondent moved to strike this complaint from the file on the grounds that it was not based on an additional assessment made by the tax commissioner before the court of county commissioners; that it was a departure from the

proceedings before the commissioner's court, and because no additional assessment had been filed by the tax commissioner, fixing such valuation upon said lands, and because' it asked for a greater valuation than was fixed by the tax commissioner.

The respondent also demurred to the complaint upon the same grounds. The court overruled the motion to strike and the demurrer to the complaint, to each of which rulings the defendant separately excepted.

Upon the trial of the case one W. E. Harrison testified, as a witness, that he was acquainted with a good portion of the lands of the defendant involved in this suit, which were situated in the Cahaba Coal Fields. Thereupon the solicitor for the state asked the witness the following question: "What, if any, recent sales have you known made of coal lands in the Cahaba coal fields in the immediate vicinity of the lands of the defendant, involved in this suit?" The defendant objected to this question upon the ground that inquiry can only be made in reference to the lands of the same character, nature and value, and that the question called for illegal and irrelevant evidence. The court overruled the objection, allowed the question to be asked, and to this ruling the defendant duly excepted.

Upon the defendant's answering that he knew of certain named persons selling coal lands to the defendant company for $10.00 per acre, which lands were in the immediate vicinity of the lands in question, the defendant moved to exclude such answer upn the same grounds, and duly excepted to the court's overruling his motion.

The same objection and motions and exceptions were made to similar questions asked and answers made by other witnesses introduced for the State.

Against the objection and exception of the defendant, the State was allowed to prove by the witness R. J. Griffin that he and his brother had purchased land from the defendant company in the Cahaba coal fields at a price exceeding $12.50 per acre. During the examination of one Johnson as a witness he was asked by the State the following question: "Do you know of any recent of-

fers made for coal lands in the immediate vicinity of defendant's lands in the Cahaba coal fields?" The defendant objected to this question upon the ground that it called for irrelevant and immaterial evidence, and duly excepted to the court's overruling this objection.

Upon this witness answering that a few months before the trial, he had offered the owners of certain coal lands adjacent to defendant's lands $25.00 an acre therefor, the defendant moved the court to exclude such answer upon the ground that it was irrelevant and immaterial. The court overruled the objection, and the defendant duly excepted.

Against the objection and exception of the defendant, the court allowed the witness J. B. Griffin to testify that he had recently leased lands adjoining the defendant's coal lands at a royalty of 5 cents per ton for coal taken therefrom, with option to lessee to buy said lands at $20.00 per acre.

Upon the hearing of all the evidence, there were verdict and judgment, assessing the value of defendant's lands at $5.00 per acre, thereby increasing the valuation given in the assessment by the tax assessor to $119,092.42. The defendant appeals and assigns as error the several rulings of the trial court, to which exceptions were reserved.

D. R. McMILLAN and PERCY & GRUBB, for appellant. The complaint filed by the State in the Circuit court should have been stricken on motion of the defendant. Likewise the demurrer to said complaint should have been sustained.

A valid assessment is a jurisdictional prerequisite to further tax proceedings or to any decree of sale for taxes. "A legal assessment is the initial step in tax proceedings in the Probate Court for the condemnation of land to the payment of delinquent taxes, without which jurisdiction does not attach."—*Driggers v. Cassady,* 71 Ala. 529; *Crook v. Anniston City Land Co.,* 93 Ala. 69. No decree for the sale of lands of appellant for non-payment of taxes could be rendered unless supported by a valid assessment. The assessment made by the Tax Assessor is superseded by the additional assess-

ment made by the *Tax Commissioner.—Stahmer v. State,* 125 Ala. 79. Hence the assessment that is the foundation of this proceeding is the Tax Commissioner's additional assessment and it is this that gave the Circuit Court jurisdiction of the proceeding. The issue in the Circuit Court should have been whether the additional assessment made by the Tax Commissioner was correct. *Stahmer v. State,* 125 Ala. 79.

The court erred in its rulings upon the evidence.—*Alabama Mineral Land Co. v. County Commissioners of Perry,* 95 Ala. 107.

SAMUEL WILL JOHN, *contra.*—The trial in the circuit court was *de novo,* and the complaint was not subject to demurrer, nor subject to be stricken. It was drawn under the rule laid down in *Sullivan v. The State,* 110 Ala. 97. The bill of exceptions does not attempt to set out all the evidence submitted to the jury, but enough is set out to show this court that it is but a fragmentary statement of some of the evidence, and that questions asked the witnesses as to sales, leases, etc., of *coal* lands adjoining in the *same coal-field,* were to show their opportunities of correctly estimating the value of the lands of the appellant. It is this kind of evidence that the statute authorizes the assessor to consider when he comes to *judge* the value of property. *Code* §§ 3939, 3940; *Alabama Min. Land Co. v. County Commissioners,* 95 Ala. 107.

McCLELLAN, C. J.—This is a proceeding under section 3979 of the Code for the correction of the assessment returned by the Tennessee Coal, Iron & Railroad Company of its lands situated in Shelby county. Under that section the Commissioners Court of the county not only had the power but it was its plain duty to increase the valuation set down in the assessment returned by the company, if it was found that such valuation was inadequate, "and fix it at the sum which the evidence showed to be the fair market or real value" of the land. This expressly conferred power was to be exercised and this mandatorily imposed duty was to be performed

by the commissioners wholly without regard to any suggestion made before them by the tax commissioner as to the real value of the land. They were to determine and fix that value on the evidence before them and without reference to the motion of the tax commissioner wherebv that officer alleged that the real value was a stated sum to which he prayed the valuation set down in the assessment be increased. If, on the evidence the commissioners found the true valuation to be greater than the assessment showed but less than the sum suggested b⁰⁰ the tax commissioners, the intermediate valuation should, of course, have been fixed and declared by them. So had they found the true value to be a sum beyond that so suggested, their plain duty was to fix and declare that sum, the estimate of the tax commissioner to the contrary notwithstanding. The commissioners having found on the evidence that the valuation claimed by the tax commissioner was the true valuation of the property, the taxpayer's appeal from that finding to the circuit court opened up the whole inquiry anew and for original investigation and determination in that tribunal. On that appeal the power and duty of the circuit court were precisely the same as had been the power and duty of the commissioners' court; to fix the valuation at the sum which the evidence adduced in that court showed to be the fair market or real value of the land, without regard to the suggestion made by the tax commissioner in the commissioners court and without regard to the conclusion reached by the commissioners court. In the circuit as in the commissioners court, the assessment returned by the taxpayer was to be taken *prima facie* as correct; but this operated only to lay the burden of averment and proof of circumstances and greater valuation upon the State, and in no degree to limit the court, the burden being discharged, in respect of fixing the true value. Hence, it is, that it was entirely competent for the State on appeal to insist that the true value was not only greater than that returned but also greater than that claimed by the tax commissioner and found by the commissioners court, and that it was not only competent for the circuit court but its clear

duty to fix the fair market or real value of the property according alone to the evidence adduced before it.  It was, therefore, no objection to the complaint filed by the State in the circuit court that it claimed a valuation in excess of that found by the commissioners, nor is it any objection to the conclusion and judgment of the circuit court that thereby a valuation beyond that claimed and adjudged in the commissioners court was found and fixed.  The taxpayer takes the risk of such increase of valuation when he appeals to a tribunal having the power and under a duty to find and declare such increased valuation if the evidence established it as the fair market or real value of his property.

Nor is there merit in the suggestion made for appellant that the proceeding was wanting in an assessment to support it.  There was an assessment; that made and returned by the taxpayer.  The case is wholly unlike those which arise in respect of property which has not been returned by the owner nor listed for taxation by the assessor, and of which the back tax commissioner is authorized and required to make assessment.

There was evidence to the effect that the lands under inquiry were in the Cahaba Valley coal fields, and that they were of the same kind and quality as the lands in those fields.  This evidence offered a predicate for the testimony which was received as to the prices at which other lands there had been sold during or near to the time covered by the assessment.—1 Greenleaf on Evidence, § 1, p. 91 ; *Ladd v. Ladd*, 121 Ala. 585, 586 ; *Alabama Mineral Land Company v. Commissioners of Perry County*, 95 Ala. 105.

But evidence of a mere offer to buy similar adjacent lands at a given price should not have been received to show the value of these lands.  This was no more than to show that the witness was at the time of the offer willing to give the stated sum for the property, and stands upon a footing analagous to that of an offer to prove that a person intended to bid a certain amount for the property the value of which was in issue, which was held to be inadmissible in *Ladd v. Ladd, supra.*  The offer is

upon a lower plane as evidence of the would be purchaser's estimate of value than actual payment by him for obvious reasons, and many considerations having no bearing upon the market value might have conduced to the owner's rejection of it; and to receive such evidence in any case of this sort may well lead to collateral inquiries and confusion of issues.

Courts do not know what relation a given royalty in the lease of coal lands bears to the value of such lands. No evidence was adduced going to show that coal lands of a lease value of five cents per ton of mineral coal was of a certain market value in fee. The circuit court erred, therefore, in receiving the evidence of the witness Griffin that he had leased lands in the vicinity, and of like quality as those involved here for five cents per ton royalty; and his further testimony that as a part of this lease contract he was given the option to purchase the lands at twenty dollars per acre, was also irrelevant to the question at issue. A mere option to purchase, certainly one thus connected with a lease, is not competent in evidence upon the inquiry as to the market sale value of similar lands in the same vicinity.

In receiving evidence of the offer to which we have referred, and of the lease, royalty and option testified to by Griffin, the circuit court erred. The fact that the bill of exceptions does not purport to set out all the evidence cannot open the way for an assumption on our part that there was other evidence which rendered this admissible. These errors appearing by what the bill of exceptions does show, they must operate to reverse the judgment in the absence of anything else in the record to put a different phase on the rulings inherently or to show that they did not prejudice the appellant.

Reversed and remanded.