(123 So. 596)

## PENNEY v. STATE.

### 6 Div. 357.

Supreme Court of Alabama.

May 15, 1930.

al interests only, 1,140 acres the fee, and. 340 acres surface rights.

K. V. Fite, of Hamilton, and Bankhead & Bankhead, of Jasper, for appellant.

Ernest B. Fite, of Hamilton, for the State.

BOULDIN, J.

The appeal is to review the judgment of the circuit court fixing the assessed values of real estate holdings of appellant in the county of Marion for taxation as of October 1, 1927.

The total real estate involved is 16,542½ acres, of which 15,062½ acres involve miner-

■ Witnesses for the state, after deposing to their knowledge of the lands and elements of value, were permitted, over defendant's objections, to give their opinion of the value per acre of the lands lying in a given township, covering many thousand acres.

Appellant insists this was error upon the ground that the law requires valuations for assessment to be fixed for each 40 acres or fraction thereof. Acts 1919, p. 311, § 85.

We do not find a like provision in the General Revisory Act of 1923. Whether other provisions of the later Act imply assessment lists shall be so made, we need not and do not here decide.

"The trial upon appeals to the circuit court shall be de novo and the court shall render a judgment ascertaining and fixing the assessable value of property involved." Acts 1923, p. 183, § 61.

Whether this calls for ascertainment of the value of each body or parcel of land, on demand of defendant, is not presented.

The statute above quoted, we think, does not contemplate .that the circuit court shall fix the valuation of each and every 40 in a great body of land. This, would greatly multiply issues, and add to the costs of the trial, if it be not wholly impractical.

If the judgment fixing the value is to be on the whole or by parcels, there is no need to confine the evidence to the several 40's.

■ The chief value of the lands involved is in the mineral rights, depending upon workable seams of coal.

After evidence that mines were in active operation in the field where these lands are located, the state was permitted, over objection, to show that Brilliant Coal Company is operating mines on lands owned by Mr. Penney.

It appeared Mr. Penney had leased to Brilliant Coal Company some 12,000 acres adjoining the lands here involved, on which the lessee assesses and pays the taxes, and on which it is operating coal mines; that the leased land was part of the body of coal lands bought largely from one owner, with later acquisitions lying within or adjacent to the same coal region.

Evidence tended to show much of the lands is underlaid by the same workable seam of coal.

The fact of active mining operations in the same region and in close proximity to these lands is matter for consideration in fixing values in connection with all the circumstances affecting such issue. This does not seem to be questioned. We find no error in admitting evidence that such mining operations were on lands owned by Mr. Penney.

■■ The mining lease from Mr. Penney to Brilliant Coal Company was admitted in evidence over defendant's objection. This lease describing some 12,000 acres lying in township 12, range 12, and township 12, range 11, and adjoining the main body of the lands here involved lying in the same townships, is dated January 31, 1927, runs to March 31, 1951, on royalty basis of 15 cents per ton, with minimum of $10,000 per year.

The court held under advisement the admission of this lease until other evidence was introduced by defendant showing the thickness of the seam, the quantity of recoverable coal per acre, the occurrence of squeezes and faults, opinion evidence of market value of the leased lands, and its value as assessed for taxation.

Fixing the value of mineral interests in lands is beset with difficulty. Uncertainty as to the area of workable coal, the expenses incident to mining, transportation conditions, and variable market conditions, must needs be considered.

Many states have statutes regulating the valuation of mining interests for tax purposes. 3 Cooley on Taxation, § 1150.

Evidence in aid of ascertainment of value may take a wide range. Broadly speaking, whatever fact would be the natural subject of inquiry by an intelligent man in the business as a prospective purchaser, and having some direct relation to value, is proper evidence.

Selling prices of similar lands in the same locality and rental values are recognized as proper subjects of inquiry in general.

The mining lease partakes both of the nature of a sale and a rental. The royalty basis probably most prevails because of the necessity for actual working of the mine to ascertain its real value.·

The royalty is the agreed value of the coal in place in so far as worked under the lease. The guaranteed minimum must be regarded as a fixed annual rental agreed upon for the leasehold rights, and as a guarantee that mining operations yielding royalties will be conducted.

Appellant relies strongly on T. C., I. & R. Co. v. State, 141 Ala. 103, 37 So. 433, 435. In that case evidence was received of a lease of adjoining coal lands on a royalty basis of 5 cents per ton. This was held error. It was said: "Courts do not know what relation a given royalty in the lease of coal lands bears to the value of such lands."

It is sufficient to say that in the present record there is evidence of the number of tons of workable coal per acre in the seam being worked. The amount realized by the lessor per acre for the area mined under the lease is mere matter of calculation.

The royalty per ton has some natural relation to the quality of the coal and mining conditions obtaining. With the additional facts in evidence, we must conclude the royalty paid is an element to be considered in fixing value. The lease was admitted without error.

While the admission of the lease may be justified in connection with, and as going to the probative force of, the evidence offered by defendant, we do not rest its admissibility on that ground. Washington Union Coal Co. v. Thurston County, 105 Wash. 208, 177 P. 774, 2 A. L. R. 1546, note 1550–1553; American Bauxite Co. v. Board of Equalization of Saline County, 119 Ark. 362, 177 S. W. 1151; Board of Commissioners of Greene County v. Lattas Creek Coal Co., 179 Ind. 212, 100 N. E. 561.

■ Letters written by appellant naming a price upon the timber on the lands were admissible on behalf of plaintiff as declarations of defendant against interest. They are something more than mere offers to sell, but insist that the price named is not above the market value. They should be considered, as of course, in the light of sales propaganda, but this does not defeat their admissibility.

The price at which an owner has assessed his lands for taxes is admissible against him in condemnation proceedings, as often declared. These letters rest upon the same principle.

■ Evidence offered by defendant as to the price at which another owner had offered to sell similar lands rests upon a different principle, and was properly rejected. T. C., I. & R. Co. v. State, supra.

■ Defendant offered to prove the values at which other similar lands were assessed in the same locality. This evidence was properly rejected on the authority of Bynum Bros. v. State, 216 Ala. 102, 112 So. 348, and Alabama Mineral Land Co. v. Com'rs of Court of Perry County, 95 Ala. 105, 10 So. 550.

The reason assigned in these authorities is that the values of other properties represent either the ex parte statement of the owner, or the finding of tax authorities in a proceeding to which the present party was a stranger. Not being evidence against him, it is not admissible for him; it is hearsay.

It seems by the Act of 1911 (Gen. Acts 1911, pp. 159–191), such evidence was contemplated. In later acts such provisions are eliminated, evidencing a legislative purpose to return to the rule theretofore declared in our decisions.

Appellant stresses the right to offer such evidence on constitutional grounds.

■ It is the declared law by the decisions of the Supreme Court of the United States that arbitrary discrimination against a taxpayer, in the matter of valuation for tax purposes, deprives the owner of property without due process of law and denies him the equal protection of the law. But this rule is

limited to an "intentional and systematic" valuation of property below its real value, or the statutory percentage for tax purposes, while discriminating against the individual in purposely holding him to a higher basis of value. Southern Ry. Co. v. Watts, 260 U. S. 519, 43 S. Ct. 192, 67 L. Ed. 375; Raymond v. Chicago Union Traction Co., 207 U. S. 20, 28 S. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757; Greene v. L. & N. R. Co., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Bohler v. Callaway, 267 U. S. 479, 45 S. Ct. 431; 69 L. Ed. 745.

No evidence was proposed of a systematic and intentional plan, sanctioned by the authorities representing the state, to assess such properties generally below 60 per cent. of their actual market value. The only proper evidence here was that going to the real value of this taxpayer's property.

■ Appellant earnestly insists the verdict should be set aside because grossly excessive in the valuation fixed, and opposed to the great weight of the evidence.

The jury fixed the assessed value of the entire properties at $180,000, 60 per cent. of $300,000 or little more than $18 per acre, full value. The board of review had fixed the assessed value at $118,007.

The evidence of state witnesses fixed a value of $25 per acre for the main body of lands lying in two townships in proximity to the Brilliant Coal Company's mines. The aggregate of these lands, some 14,000 acres, at such price, exceeds the valuation of the whole fixed by the jury.

The values fixed are several times the price at which the mineral rights were acquired from small holders, and indeed several times the price for which the large body was acquired ten years earlier and before any developments and transportation facilities into the zone were made and provided.

Some other large bodies have sold higher. It is manifest that the price fixed as of October 1, 1927, was greatly influenced by the Brilliant Coal Mines and the lease under which that company holds.

To go into a detailed discussion of the evidence of witnesses as to the extent of workable coal, and their knowledge on the subject, and the many other phases of evidence which have been carefully studied, would extend this opinion beyond reasonable length. Our impression is the valuation was too high; but we cannot say that the evidence is so clear and convincing as to justify us in disturbing the finding of the jury, approved by the trial court.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.