48 So.2d 431

MONROE BOND & MORTGAGE CO. v. STATE ex rel. HYBART et al.

1 Div. 414.

Supreme Court of Alabama.

Oct. 19, 1950.

A. H. Elliott, Circuit Sol. of Brewton, John M. Coxwell, County Solicitor, and R. L. Jones, County Atty., of Monroeville, and A. A. Carmichael, Atty. Gen., and Wm. H. Burton, Jr., Asst. Atty. Gen., for appellees.

Barnett, Bugg & Lee, of Monroeville, for appellant.

FOSTER, Justice.

The question on this appeal is whether the decree of the circuit court, in equity, fixing the value as of October 1, 1946 of real estate of appellant for ad valorem taxes for the tax year beginning at that time, is the fair taxable value of such property or violates appellant's right to equal protection of the laws. The law is that such property shall be assessed at sixty percent of its fair and reasonable market value. Title 51, sections 17, 46 and 104, Code.

The estimated taxable value of the property as returned by the taxpayer for the year in question and as fixed by the county board of equalization is as follows:

|  | By tax-payer: | By board: |
|---|---|---|
| 4 Metal Cotton Warehouses | $4,000.00 | $8,000.00 |
| 8 Frame Cotton Warehouses | 6,500.00 | 10,000.00 |
| Kyser Place 13 acres | 300.00 | 5,000.00 |
| 40 acres | 40.00 | 200,00 |
| Melton lots 3 acres | 100.00 | 3,000.00 |
|  | $10,940.00 | $26,200.00 |

This does not seem to include the office building.

On appeal to the circuit court a trial was had de novo in equity, to which appellant caused a removal on the claim that the valuation was an arbitrary discrimination against appellant. No question is raised as to the necessity for such removal. The power of the court at law is made very broad by section 110, Title 51, Code, on such appeal. That court fixed the assessed values as follows:

| 4 Metal Warehouses | $6,000.00 |
|---|---|
| 8 Frame " | 6,400.00 |
| 1 Office building (not in return) | 400.00 |
| 16 Acres (this seems to include the 13 acres called the Kyser Place on which the buildings are situated and 3 acres called the Melton lots on which no buildings are situated, all in Monroeville) | 4,400.00 |
| 40 Acres (not in Monroeville) | 100.00 |
|  | $17,300.00 |

Title 51, sections 74, 109 and 110, Code.

From that assessment an appeal was taken to this Court by the taxpayer, and cross assignments of error were made by the board of equalization. No question is here raised as to the right of the board to make cross assignments. It does not seem to have the right of appeal. Sections 74 and 109, Title 51, Code. The taxpayer claims that the taxable values should be approved as returned by it. They were the same as returned by it for the preceding year. Or if not, then the taxable values fixed by the board for the preceding year should be approved for the current year. They aggregated $11,340.00. The State Department of Revenue made an assessment of the capital stock for the year beginning October 1, 1946 at $9,600.00. It is an Alabama corporation. This figure was presumably reached by the computation required by law, that is, first to ascertain the full market value of all the stock, ascertain sixty percent of the amount of it and deduct from that amount the assessed value of the real and personal property of the corporate taxpayer. Title 51, section 25, Code. But as far as here material, the only inquiry is as to the taxable value of the property described above.

With reference to that issue the trial judge, sitting in equity, considered the evidence taken by deposition in connection with it, which he expressed as follows:

"This cause is submitted on the pleading and proof as noted by the register, and upon consideration thereof my mind was left in

a state of confusion because of the contradictory and irreconcilable statements of the witnesses. The testimony for the complainant disclosed that there were twelve warehouses and one office building involved and that four of these warehouses were constructed of corrugated iron and eight of lumber. On the other hand, one of the witnesses for the respondent, who claimed to be a builder and contractor, testified that he had inspected the buildings the week before and that there were thirteen warehouses; that eight or nine of them were constructed of corrugated iron and the remainder of lumber. The witnesses for the respondent placed an average value of about $15,000.00 each on the warehouses. The witnesses for the complainant, as to value of the warehouses, were equally unsatisfactory, because it was based on the cost price some twelve to fourteen years ago, less the depreciation allowed by the Government. It was evident that a personal inspection of the premises was advisable and necessary.

"After inviting the solicitors for the parties to accompany me on a tour of inspection, which invitation was declined by the solicitors on both sides, I made a personal inspection of the premises and buildings. I found that there were eight wooden warehouses, constructed of the knottiest, shoddiest, cheapest lumber I have ever seen in any building. The boards were nailed upright to the frame and were evidently green when the buildings were built and have shrunk to where there are openings from half to one inch wide between the boards. The frame work, foundation and floors of said buildings are made of better material and they each have a corrugated iron roof.

"In arriving at a valuation to be placed upon the property involved, the court acts as a jury and under the decision of the Supreme Court in the case of Whaley v. Sloss-Sheffield S. & I. Co., 164 Ala. 216 [51 So. 419]: 'The jury is not bound to return a verdict according to the testimony of the witnesses, if such testimony is in conflict with what their personal inspection discloses.'

"After considering the testimony of the witnesses in the light of what was disclosed on my personal inspection of the premises, I am of the opinion that the Monroe County Board of Equalization has placed too high a valuation on the property involved, especially in view of the valuation for taxation fixed on comparable properties in the community and county as a whole."

One of the chief contentions of appellant is centered around the claim that the assessment as made by the trial court is discriminatory, in that property generally in the county of a similar sort is assessed at a much less proportion of its fair and reasonable market value; and another contention is that its fair and reasonable market value is much less than ascertained by the court in fixing its assessed value.

With respect to the claim of discrimination, there is no trouble about the applicable principles of law settled by the decisions of this Court and of the Supreme Court of the United States. They hinge around the equal protection clause of the Fourteenth Amendment and the due process clause, section 6, and sections 211 and 217 of the Alabama Constitution. The discrimination which violates constitutional rights is that which results from applying a percentage of the fair and reasonable market value of the property in excess of that systematically used in respect to other property in the county and that this results from a purpose or design to discriminate against the taxpayer, either specially or as a member of a class; but that if there is a fair and honest judgment manifested in fixing the assessed value and a purpose to deal fairly without discrimination by a systematic method, the principle of inequality is not manifest. That principle was carefully reviewed with a citation of the pertinent cases in Hamilton v. Adkins, 250 Ala. 557, 35 So. 2d 183; certiorari denied, 335 U.S. 861, 69 S.Ct. 133, 93 L.Ed. 407. The case of Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340, 28 A.L.R. 979, relied on by appellant, is not in any respect authority for a contrary view, but sustains it.

The Supreme Court of the United States gives effect to the opinion of the state supreme court in the interpretation of the state constitution, unless it violates some

feature of the Federal Constitution, such as the equal protection clause of the Fourteenth Amendment. Puget Sound P. & L. Co. v. King Co., 264 U.S. 22, 44 S.Ct. 261, 68 L.Ed. 541. In interpreting the equal protection clause of the Fourteenth Amendment that court declared the principle referred to in Hamilton v. Adkins, supra. State constitutional requirements against discrimination may be more restrictive or cramping, but cannot be so liberal as to permit that which is prohibited by the Fourteenth Amendment as so interpreted. Nashville C. & St. L. R. R. v. Browning, 310 U. S. 362, 60 S.Ct. 968, 84 L.Ed. 1254. See, State v. Alabama Power Co., 48 So.2d 445. But our cases have in effect given our Constitution the same interpretation as to discrimination where no classification is involved, as the United States Supreme Court has given the equal protection clause of the Fourteenth Amendment. Penney v. State, 221 Ala. 230, 128 So. 596; State v. Hall, 172 Ala. 316, 54 So. 560; Hamilton v. Adkins, supra. So that our Constitution in respect to discrimination, not involving classification, sections 211 and 217, supra, is not more restrictive or cramping than the equal protection clause of the Fourteenth Amendment. Therefore it has application here.

■ The inquiry in that connection is whether the valuation fixed by the trial court is discriminatory within that principle, since it properly conducted the trial de novo. State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 630(11), 11 So.2d 342; State v. Hall, 172 Ala. 316, 54 So. 560; Title 51, sections 110 and 140, Code.

It is urged for appellant that the trial court did not undertake to fix the percentage of values on a basis of equalization with the percentage applied to other assessed values in the county according to the system applied by the assessing authorities and, therefore, that the case should be reversed and remanded to that court with direction to do so. But the finding of the trial judge, we think, indicates a contrary view, in that he states that the board "has placed too high a valuation on the property involved, especially in view of the valuation for taxation fixed on comparable properties in the

community and county as a whole." The assessing authorities of the county are shown to have sanctioned a "systematic and intentional plan" to assess such properties generally below sixty percent of their actual market value, see, Penney v. State, 221 Ala. 230, 128 So. 596, of to wit thirty percent to forty percent. The quotation above indicates a purpose of the trial judge to fix the instant assessment on the same basis.

■ We are reviewing the judgment and finding of the trial judge on a trial by him de novo and without a jury. Such trial is not infected with any intentional discrimination which the board may have shown, if there were such discrimination. As to that, we have not undertaken to find out. The trial judge seems to have thought that on an equalization basis, the assessment values fixed by the board were too high and evidently on such basis proceeded to make a new valuation. So that the contention that the board had not properly equalized the values in question was sustained on a trial de novo and new values fixed. Any arbitrary or intentional discrimination by the board, as contended by appellant, is now moot. So that the claim of wrongful discrimination *by the board* is not here involved. And we do not see in the decree of the trial court or in the record anything but an honest intention by the court to make an assessment which would be in accordance with a fair equalization.

Leaving out the discriminatory feature of the contention, we revert to the claim that the tax valuation was set higher than the evidence justifies. The rule for measuring the fair and reasonable *cash* value is stated in State v. Hall, 172 Ala. 316, 54 So. 560; State v. Woodward, 208 Ala. 31, 93 So. 826. It is noted that under prior revenue acts the test was the fair and reasonable *cash* value, now changed to market value in sections 17, 46 and 104, Tit. 51, supra. See, Bynum Bros. v. State, 216 Ala. 102, 112 So. 348. The change in that respect is not reflected in the evidence in this proceeding.

The figures made by the trial judge indicate that the twelve warehouses and one office building were separately listed and valued from the sixteen acres of land on

which they stood, which is also separately assessed. Title 51, section 39, Code.

The evidence submitted by appellant to show that those values are too high did not consist, in the opinion of the witnesses, of the fair market value of the property on October 1, 1946, but of proof of circumstances which are thought to be material upon that inquiry, and only serve to support favorable inferences and do not form a fixed basis for making the values. Such evidence is said to take a wide range. Penney v. State, 221 Ala. 230(3), 128 So. 596.

One of the urgent theories of appellant relates to historical cost less depreciation. It was held under a former statute that present fair market values for tax purposes are not so affected as to property which has a market value and is used for commercial purposes. On that theory the original cost of production in 1934 to 1938 would be of no evidential importance in fixing the fair market value as of October 1, 1946 of such property. State v. Bienville Water Supply Co., 89 Ala. 325, 8 So. 54. The same principle was applied to the present cost of reproduction in respect to such property. Commercial Realty Co. v. State, 209 Ala. 698, 96 So. 906. But the Court in those cases was construing statutes which respectively limited the nature of the evidence to be given in making such valuations. In the Bienville case, supra, it was that consideration should be given to "its character, whether improved or not, its surroundings, and, if it is productive, the amount of its average annual yield." The Court held that the purchase price not close to the date of valuation is not a proper factor in determining the market or real value of the waterworks plant. In the Commercial Realty Co. case, supra, the Court was acting under the Revenue Act of 1919, General Acts 1919, page 283, which provided that value means "fair and reasonable cash value of the taxable property, and shall be estimated at the price at which the property would bring at a fair voluntary sale." Upon the authority of the Bienville Water Supply Co. case, supra, the Court held that the present reproduction cost was not admissible. The Court also observed that no statute had changed the rule of the Bienville case.

The successor to those statutes is our sections 46 and 55, Title 51, Code. They fix the fair and reasonable market value as the ultimate result to be reached. But section 46 provides that this is to be "according to the best judgment of the assessor, the board of equalization and agents of the department of revenue can form upon information, inspection or otherwise, taking into consideration all elements or factors bearing on such value as heretofore authorized". Section 55 provides that the value shall be obtained from "information entered on the tax return list and from all other information known to him, or which he may procure".

We think those statutes open the door which was shut in the Bienville and Commercial Realty cases, supra, so as to admit such evidence in accordance with the prevailing opinion in other jurisdictions. Sweet v. City of Auburn, 134 Me. 28, 180 A. 803, 104 A.L.R. 784, 795.

Such evidence was given in this case without objection, not necessary to be made in such a trial, which is in equity, and we presume was considered by the court, not as fixing a fair and reasonable market value but as evidence material to its determination. We think that is the proper view of the matter at this time.

Appellant also thinks that the value of the tangible property for taxation is accurately reflected in the market value of the capital stock of the corporation, and also in the assessed value of the shares of stock by the State Department of Revenue. But those matters are not at all safe guides as to the value of the tangible property for ad valorem tax purposes. The market value of the stock is influenced by the earnings and financial standing of the corporation. Those factors sometimes do not enter into the taxable value of its tangible property. The assessed value of its shares, as we have observed, is ascertained by deducting from sixty percent of their total market value the assessed value of its tangible property. Title 51, section 25, Code. It is thereby intended to reach the intangibles of the corporation, sometimes manifested by its good will, going concern value, financial stand-

ing and earnings. So that neither of such contentions can be sustained on this appeal as they were not sustained in the trial court. All such evidence is admissible being pertinent to the inquiry, but not controlling.

On the other hand, in that court there was not only evidence to support the findings of fact, but the trial judge made a personal inspection of the property before making his finding. This is permissible practice. Adalex Const. Co. v. Atkins, 214 Ala. 53, 106 So. 338; Watt v. Lee, 238 Ala. 451, 191 So. 628; Fuller v. Blackwell, 246 Ala. 476, 21 So.2d 617. There is no complaint on this appeal of his doing so. It was upon notice to opposing counsel with an invitation to accompany him. His conclusion is therefore as if it were the verdict of a jury. Hackett v. Cash, 196 Ala. 403, 72 So. 52; Whaley v. Sloss-Sheffield Steel & Iron Co., 164 Ala. 216, 51 So. 419.

The trial judge doubtless considered all the evidence, as he says he did, as well as what he saw. The evidence shows the buildings were insured at $33,000.00, and that the land on which they stood was worth $10,000.00 to $13,000.00; the assessed value of the capital stock was $9,600.00; the testimony of the witnesses as to the cost of the present reproduction; the historical cost; existence of an automatic sprinkler system at a cost of $9,000.00, which he also saw. He saw and described the existing condition of the buildings and the material in them, and took into consideration the assessed values of other comparable property.

The insurance of $33,000.00 was what the president of the company testified represented one hundred percent of the insurance value of all the buildings. If to that is added $10,000.00 for the value of the land on which they are situated, the aggregate value would be $43,000.00. If there is applied a taxable value of forty percent, the taxable value of the aggregate would be $17,200.00. If $100.00 is added to that for the forty acres, as the court found to be proper, the result is the figure there fixed of $17,300.00.

There is evidence that the assessments of property in the county by the tax officers were attempted to be made on a basis of thirty percent to forty percent of its fair market value. There was other evidence that it was less than that. Exactitude in such matters is not practicable. We think that the valuation for the assessment made by the trial court and the decree based on it should not be reversed.

Affirmed.

BROWN, LAWSON and STAKELY, JJ., concur.