STANFORD v. SMITH.

Opinion delivered April 14, 1924.

1. EXCHANGE OF PROPERTY—FRAUD—SUFFICIENCY OF EVIDENCE.—In a
   suit to rescind an exchange of property, evidence *held* to show
   fraud authorizing rescission.

2. EXCHANGE OF PROPERTY—RESTORATION.—In a suit to rescind an
   exchange of property for fraud, where plaintiff tendered a recon-
   veyance of the land but retained as damages $1,000 paid him by
   defendant, subject to being charged therewith if not entitled
   thereto, this was a sufficient restoration of the *status quo* on
   plaintiff's part, and he could waive the defendant's inability to
   restore fully the consideration received by him.

3. CONTRACTS—RESCISSION.—As a general rule, rescission will be
   granted only upon condition that the party asking it restore to
   the other party substantially the consideration received, and, if
   he cannot do so, he is remitted to his action for damages.

4. CONTRACTS—RESCISSION—RESTORATION OF CONSIDERATION.—Where
   a party seeking rescission is in position to restore what he
   received, relief should not be denied because defendant cannot
   do likewise, in which case the value of the portion which can-
   not be restored may be ascertained, and the equities of the
   parties thus adjusted.

5. EXCHANGE OF PROPERTY—RESCISSON—RECOVERY OF DAMAGES.—In
   a suit to rescind an exchange of lands, plaintiff could not recover
   damages also.

Appeal from Desha Chancery Court; *E. G. Ham-mock,* Chancellor; reversed.

*X. O. Pindall,* for appellant.

1. This case, on the facts and the law applicable
thereto, is controlled by the case of *Cady* v. *Rainwater,*
129 Ark. 498.

2. The decree's recital that plaintiffs had not
offered to place the defendants wholly *in statu quo,* dis-
gards the real status of the case. The question of ten-
der or lack of it might have been tested by the demurrer
originally filed, but the withdrawal thereof, and obtain-
ing leave to file an answer, left the jurisdiction with the
chancery court to administer complete relief. 52 Ark.
414; 87 Ark. 211; 107 Ark. 70; 32 Ark. 562. It is only
incumbent on the plaintiff to restore as far as possible.
25 Ark. 204.

Equity does not require entire rescission. It will rescind as far as possible, and there may be a partial rescission and damages as well. See also 100 Ark. 144; 96 Ark. 371; 55 Ark. 296; 97 Ark. 265; 98 Ark. 44.

*Johnson & Smith,* for appellees.

1. Before one can ask for the rescission of a contract of sale or exchange for fraud, he must first restore. or offer to restore, to the defendant the property received from him. He must place the defendant wholly *in statu quo.* 5 Ark. 395; 15 Ark. 286; 17 Ark. 603; *Id.* 240; 20 Ark. 424; 25 Ark. 204; 31 Ark. 151; 35 Ark. 483; 38 Ark. 334; 59 Ark. 251; 134 Ark. 80; 140 Ark. 336. The case of *Cady* v. *Rainwater,* 129 Ark. 498, relied on by appellant, is clearly distinguishable from this case, in this: the Cadys first went to Rainwater and asked for a rescission of the contract, and, on his refusal, they filed suit, attached a deed of reconveyance and prayed for rescission *in toto.*

2. There was no deed tendered, nor any offer to reconvey the Texas land, in the complaint, and evidence to the effect that they had filed a deed since the suit was brought with the chancery clerk, offering to reconvey the land to appellees, was inadmissible. He must stand or fall upon the case made by his complaint. 13 Ark. 88, 95; 24 Ark. 371, 381; 41 Ark. 393, 400.

3. Appellant's proof of damages in "going to Texas and back" was entirety too remote. 71 Ark. 91, 99. Rescission and damages both are never allowed. 15 Ark. 286, 291; 72 Fed. 387; 99 Ark. 438, 442; 101 Ark. 95, 99.

4. The representations were not shown to be fraudulent. 99 Ark. 438; 154 Ark. 193; 11 Ark. 66; 47 Ark. 165; 97 Ark. 268; 112 Ark. 498.

SMITH, J. This suit was brought to effect a rescission of a contract of sale between the parties.

On February 28, 1922, appellant Stanford was the owner of an eight-room house in the town of Dumas, and he also owned a half interest in a mercantile business known as the Dumas Hardware & Furniture Company in

Dumas. At the same time appellee Smith was the owner of forty acres of land in section 233, in Hidalgo County, Texas.

On account of failing health, Stanford contemplated a change of location, and he became interested in an advertisement which he read in a Little Rock paper. This advertisement was published by Roy L. Byrn, as the agent of Smith, and contained a proposal to sell the Texas land. Stanford and his wife took the matter up with Byrn, and were told that twenty acres of the land were in cultivation, and photographs were exhibited showing citrus fruits and palms growing thereon, and Byrn represented that the land had been plowed, and was so ditched that proper irrigation had been furnished, and that all Stanford would have to do would be to turn the water on and plant a crop.

It was represented that the land was within three miles of a town where a good school was taught, and that the school district ran school busses to and from the school every day, which would be available to residents on Smith's land. That this land and similar lands were selling at from three hundred to one thousand dollars per acre, and rented readily at twenty-five dollars per acre. Stanford advised Byrn that he had no money to buy the land, but that he had the house and the interest in the mercantile business referred to above, which he would trade for the land. Byrn undertook to negotiate this trade, and was the intermediary between Stanford and Smith.

An inventory of the mercantile business was taken and the stock of goods invoiced $11,388. In addition, there were outstanding current accounts due the firm amounting to $21,000. These accounts were believed to be good, and were represented so to be by Stanford.

Stanford had never seen the Texas land, and prepared to visit it. He was assured by Byrn and Smith that this was unnecessary, as Smith was thoroughly familiar with the land, and had authorized the representations made in regard to it, and stood back of the

representations which Byrn had made, and it was stated that, if Stanford was not satisfied with his trade, after he had seen the land, Smith would make good any expenses which Stanford had incurred in moving on the land and in moving back, if he did so. Byrn's testimony substantially corroborates Stanford in regard to the representations made to Stanford to induce him to trade, and the testimony of Byrn's stenographer is even stronger than that of Byrn himself. This witness corroborates Stanford in all essential parts. Byrn testified that he had never seen the land, and knew nothing about it, except what Smith had stated to him, and that Smith authorized him to make the representations which he did make to induce Stanford to trade. It was stated by Smith that he was almost giving away the land, and that his reason for so doing was that his wife was unwilling to remove to Texas.

The trade was finally consummated, and, by its terms, Smith paid Stanford $1,000 in cash and assumed an indebtedness of $2,000 due by Stanford on his house, and assumed liabilities against the stock of goods amounting to $8,500; and Stanford assumed, on his part, an obligation to pay a balance of purchase money due on the Texas land, amounting to $3,600.

After the trade had been finally completed and the deeds exchanged, Stanford removed to Texas, and, upon his arrival there, found the land was four and one-half miles from town, and not accessible to the public school. The land was not in cultivation, and was not irrigated, and, so far from having a rental value of $25 per acre, it was shown by the testimony of residents of that vicinity that its market value was not so great. This testimony is by no means undisputed, but it is not required that it should be.

After a careful consideration of this testimony, we think it very clearly appears that these representations were made; that they were false; that Stanford relied upon them, and had the right to do so; that they were material, and induced Stanford to enter into the con-

tract; and we think he is therefore entitled to a rescission of the sale.

It is insisted, however, that Stanford has not offered to restore the *status quo* of the parties. But we think he has sufficiently done so. He executed and tendered a deed to the land in Texas. He did not tender the thousand dollars paid him, but he claimed that sum as damages resulting from his removal to and return from Texas after the deal was closed. He agrees, however, that he may be charged with this sum if he is not entitled to claim it as damages.

It thus appears that Stanford is in position to restore what he received from Smith. There is more difficulty about Smith restoring what he received; but Stanford waives this, and asks that equity be administered as nearly as can be under the circumstances.

The mercantile business was operated as a copartnership, and that copartnership was, of course, dissolved by the sale of Stanford's interest therein. We cannot reestablish this partnership, but we can charge Smith with the value of the property which he received, after giving him credit for the debts against it which he assumed.

It appears that Stanford did not pay any part of the unpaid purchase money which he agreed to assume on the Texas land, and he will be absolved from his obligation so to do upon the rescission of the contract, as we think he has made a case entitling him to that relief.

Smith appears to have paid some of the debts which he assumed, including a lien against the house, and he is, of course, entitled to have credit therefor.

The case has not been sufficiently developed for us to find the value of Stanford's interest in the mercantile business, including the outstanding accounts, and if this value does not equal the estimate made as the basis of the trade, Smith will be entitled to credit for the difference.

Upon the remand of this cause, which is here ordered, the court will, if so advised, appoint a master to ascertain and report the matters necessary to adjust the equities of the cause, and, in so doing, will allow Smith credit for the thousand dollars, and credit will also be allowed for any payment on the debts which Smith assumed; and the master will also allow Smith credit for the difference, if any, between the market value of Stanford's interest in the copartnership as of that date and its assumed value when the trade was made. It appears that the new copartnership, of which Smith became a member on the retirement of Stanford from that firm, has assumed and has by this time probably discharged the debts of that firm. These facts should be taken into account in determining the market value of the mercantile business.

It is insisted that a decree of rescission should not be awarded, for the reason that it is impossible to restore the status of the parties. But the party who asks rescission can restore what he received, and offers to do so. This consists of the Texas land and the thousand dollars. Smith cannot restore, in its entirety, to Stanford what he received from Stanford; but Stanford waives this. The residence can be restored, and, while the partnership interest cannot be restored to Stanford, its value can be ascertained, and a decree for that value awarded in lieu of the property itself.

It is the general rule that rescission will be granted upon the condition only that the party asking it restore to the other party substantially the consideration received, and, if he cannot do so, he is remitted to his action for damages. Here the party asking rescission is in position to restore what he received, and is offering to do so, and we think he should not be denied this relief because the other party cannot do likewise as to the whole consideration, but the value of the portion which cannot be returned may be ascertained, and the equities of the parties thus adjusted. This was done in the case of *Cady* v. *Rainwater,* 129 Ark. 498. In *Myrick* v. *Jacks,*

33 Ark. 425, it was said: "When courts cannot place parties wholly *in statu quo,* they were not thereby precluded from granting relief against fraud. They may proceed to do so as nearly as possible, and make compensation."

In 4 R. C. L., p. 511, at § 23 of the chapter on Cancellation of Instruments, it is said: "In administering the remedy of cancellation, the fundamental theory on which equity acts is that of restoration. The injured party is the primary object of this purpose, and therefore it is not indispensable that the complainant be able to place the defendant *in statu quo* in those cases where it will not be inequitable to permit a rescission without so doing. If the requisite grounds for relief are clearly established, equity will not decline to grant its aid merely because circumstances intervening since the occurrence of the transaction complained of may render it difficult to restore the parties exactly to their original situations. Ordinarily, of course, rescission is allowable only when it is possible to restore the other party to his former position; and if no effort is made to rescind a conveyance or agreement until such restoration has become impossible, relief by way of rescission cannot be granted."

See also §§ 93, 95, 96 and 100 of the chapter on Cancellation of Instruments in 9 C. J.; 2 Black on Rescission and Cancellation, § 616, p. 1416, § 618, p. 1426, § 627, p. 1453; *Bunch* v. *Weil,* 72 Ark. 343.

Here Stanford appears to have complained as soon as he discovered the fraud, and brought this suit with reasonable promptness when redress was denied him. At any rate, it is not urged that relief should be denied by reason of any failure or delay on his part to act promptly.

The court found that the testimony did not warrant a finding that Smith was guilty of deceit, or that he knowingly misrepresented the facts concerning the condition of the Texas land to such an extent as to entitle Stanford to a rescission of the contract, and that the

plaintiff Stanford "has not offered *in toto* to place Smith back *in statu quo*," and for these reasons dismissed the complaint as being without equity, and this appeal is from that decree.

As we have said, we do not agree with the chancellor in these findings. We think it does clearly and sufficiently appear that Stanford was deceived, to his injury, and that, while it is true that Stanford "has not offered *in toto* to place Smith back *in statu quo*," this offer has been made in such a way that the equities of the parties may be adjusted.

Appellant Stanford insists that, in stating the account between the parties, certain damages which he sustained should be considered, chiefly the expense of removing to and returning from Texas, which expense, he says, exceeded the thousand dollars paid him by Smith. We think these damages are not recoverable. Stanford had the option to sue for these damages, and in that suit he could have recovered any damages he was shown to have sustained, but he has elected to ask rescission, and he cannot, in a suit of that character, have his property back and damages too. *Cleveland* v. *Biggers, ante* p. 377. We have directed the court to find the difference, if any, between the market value of the interest in the mercantile business and the value thereof which was assumed as the basis of the trade, only because the equities of the parties cannot otherwise be adjusted.

The decree will therefore be reversed, and the cause remanded with directions to the court below to order the rescission of the trade and the cancellation of the respective deeds of the parties, and the court will appoint a master, if the court is so advised, to adjust the equities in the manner herein indicated.