193 So. 127

**TOLLETT v. MONTGOMERY REAL ES-
TATE & INS. CO.**

6 Div. 601.

Supreme Court of Alabama.

Jan. 11, 1940.

Barber & Barber, of Birmingham, for appellant.

Cabaniss & Johnston, Newton DeBarde-leben, and K. E. Cooper, all of Birmingham, for appellee.

FOSTER, Justice.

The question in this case is whether the bill in equity filed by appellant contains an equitable right against Montgomery Real Estate and Insurance Company, whose demurrer was sustained, and the bill dismissed as to it. We will refer to it as appellee.

The bill alleges that complainant lived in Birmingham, and owned forty acres of land in Chilton County, Alabama; that appellee was a real estate broker in Birmingham, and had in its employ Thomas T. Ellis as a salesman; that she listed for sale with appellee, acting by Ellis in the line and scope of his authority, said forty acres of land; that Ellis personally owned a piece of city property; that she did not know that he was the owner of it, but that through fraudulent representations he induced her to deed him the land in exchange for the city property; that in doing so he was acting in the line and scope of his employment by appellee.

The bill undertakes to set out a complete story in chronological order, entering with great detail into a statement of evidential facts on which the charge of fraud is based. It is not necessary to rehearse them here.

Upon the basis of that fraud the bill seeks a rescission of the transaction, offering to do equity, and seeks a personal judgment against both appellee and Ellis as for deceit in procuring the transaction, and also for damages to her farm by Ellis and his privies, resulting from waste while they have had it.

Appellee has no interest shown by the bill in the controversy insofar as a rescission is concerned. But its contention is that it is not shown by any allegation in the bill that it is liable for damages in either aspect in which it is claimed in the bill.

The controversy with Ellis and his privies both for a rescission and for damages is not involved on this appeal. But the question is whether appellee is liable in damages on account of such alleged fraud by its agent in the line and scope of his authority.

The claim for damages for deceit is not consistent with the prayer for a cancellation of the deeds, which is but a rescission. The defrauded seller may either affirm the sale and sue for the deceit, or may disaffirm and recover the property sold. Day v. Broyles, 222 Ala. 508, 133 So. 269; Southern Bldg. & Loan Ass'n v. Argo, 224 Ala. 611, 141 So. 545; Southern Land Development Co. v. Meyer, 230 Ala. 40, 159 So. 245.

When he sues for deceit he is thereby standing on the contract. Moore v. Oneonta Motor Co., 223 Ala. 510, 137 So. 301; Southern Bldg. & Loan Ass'n v. Bryant, 225 Ala. 527, 144 So. 367; Brasher v. First National Bank, 232 Ala. 340, 168 So. 42.

In a suit in equity for the cancellation of instruments, the parties will be given complete relief consistent with the theory of cancellation. Smith & Sons v. Securities Co., 198 Ala. 493, 73 So. 892; 12 Corpus Juris Secundum, Cancellation of Instruments, § 79, p. 1083, text and note 74.

When a vendor exercises the right to rescind the sale and cancel the deed for fraud, he may recover in the same suit just claims for waste due to the negligence or willful conduct of the purchaser or his privies. 66 Corpus Juris 798, § 422, and page 843, § 513. Such claims are consistent with the theory of cancellation and rescission. It is but a method of making the vendor whole. But to rescind and get the

property back, and also recover damages for deceit would do more than make her whole, and, therefore, the court gives an election of remedies under such circumstances. So that the only possible claim of appellant for damages consistent with her claim for rescission is that of waste, which is included in the allegations and prayer.

■ But do the facts show a liability by appellee for the waste committed by Ellis after he had fraudulently acquired the land from complainant? Having elected in this suit, so far as it is concerned, to cancel and rescind for the fraud and recover the land and damages for the waste, the inquiry is whether the waste is so related to the fraud committed by the alleged agent of appellee as to be its proximate result. When the transaction was closed, and the deeds passed and possession given, the fraud, if any, which induced it created a condition which came to a rest. The waste which followed is not a proximate result of the fraud, unless the act of Ellis in committing it was such as is the natural probable consequence of the fraudulent transaction or should have been contemplated. Sloss-Sheffield Steel & Iron Co. v. Wilkes, 236 Ala. 173, 181 So. 276.

Either contingency is sufficient: that the result was (1) the natural and probable consequence of the wrongful act, or was (2) reasonably to have been contemplated. Birmingham Water Works Co. v. Martini, 2 Ala.App. 652, 56 So. 830; 15 Ala.Dig. 313, Negligence, ☞56(1); Alabama Power Co. v. Curry, 228 Ala. 444, 153 So. 634; Morgan Hill Paving Co. v. Fonville, 218 Ala. 566 (16 and 17), 119 So. 610; Smith v. Alabama Water Service Co., 225 Ala. 510, 143 So. 893, 895; Louisville & Nashville R. Co. v. Maddox, 236 Ala. 594, 183 So. 849, 118 A.L.R. 1318.

■ But the waste committed by Ellis, if any, before the transaction was closed and done in and about his agency, and in the scope of his employment was chargeable to appellee.

In this case, it is alleged that by the fraudulent act of appellee, acting by its authorized agent, the land of appellant came into the possession of Ellis.

■ The fraud may be the proximate cause of the result, though it is not proximate in time, if it is proximate in efficiency. Its efficiency in that respect may be preserved although other causes may have sprung up which have not impaired its ef-

ficiency. Lanasa Fruit Steamship & I. Co. v. Universal Ins. Co., 302 U.S. 556, 58 S.Ct. 371, 82 L.Ed. 422.

■ If, through the fraud of appellee acting by its agent with due authority, the duty to use due care not to commit waste was imposed on Ellis, though the want of such care producing the waste was the most immediate cause of it, appellee should not be held without the pale of proximate causation, since its act in creating the duty on the part of Ellis served to continue the efficiency of the fraud into a failure of performance of the duty. If as a creature of the fraud, Ellis was in possession of the land imposed thereby with a duty to use due care not to cause waste, the failure to exercise such care is a proximate result of the duty thus imposed. One who produces the duty is ordinarily proximately responsible for such breach as may naturally follow. This result would be different if the duty to use due care did not naturally follow from the alleged fraud.

■ It is claimed that the allegations in the bill as to the authority of Ellis as agent merely express the conclusion of the pleader. That is probably true in respect to the commission of the waste. While the agency in that connection is alleged, the facts show that as to it, appellee had no business interest; that Ellis individually, and not as agent for appellee, claimed and had possession of the land. But in negotiating the transaction, and in making the false representations, the bill alleges that Ellis was the agent for and employed by appellee, and acting as such within the line and scope of his agency. That is not merely the conclusion of the pleader within the rule declared in National Park Bank v. Louisville & Nashville R. Co., 199 Ala. 192 (9), at page 206, 74 So. 69. That authority holds that the pleading should allege facts showing the agent's authority or that he was employed to do the particular acts. 49 Corpus Juris 70, § 55.

But taking the entire allegations of the bill, and all the facts detailed, we think it sufficiently alleges that the fraud was within the authority of Ellis as agent of appellee. Williams v. Bedenbaugh, 215 Ala. 200, 110 So. 286; Gulf Electric Co. v. Fried, 218 Ala. 684, 119 So. 685.

In the Fried case, supra, it was held that the principal is liable for the fraud of his agent, though without his consent or participation, if it is done in the course of the

agent's employment, and is not a willful departure from it, and it is sufficient if he acts within the apparent scope of his authority. Alabama Machinery & Supply Co. v. Caffey, 213 Ala. 260, 104 So. 509; Standard Oil Co. v. Gunn, 234 Ala. 598, 176 So. 332; Birmingham News Co. v. Browne, 228 Ala. 395, 153 So. 773; for discussion of that principle see 2 Amer.Jur. 281, § 362.

But the principal is not liable for the willful torts of an agent done for the personal benefit of the servant. Birmingham News Co. v. Browne, supra; Johnson v. Alabama Fuel & Iron Co., 166 Ala. 534, 52 So. 312.

In this case, Ellis, in making the sale, was acting for himself and for his own personal benefit. And if appellant had notice that he was doing so, she could not fasten any claim of liability on appellee occasioned by the fraud of Ellis in negotiating the transaction. But if she intrusted the sale of her land to Ellis as agent of appellee, and he was such agent, and Ellis deceived appellant into supposing that he was negotiating a sale as her agent to a third person, and she did not know the true status of that matter, and did not know that she was dealing with Ellis on his own account, his status as the authorized agent of appellee continued insofar as appellant was concerned, and in that event appellee would be liable for the fraud of Ellis, if any, in negotiating the transaction. Restatement, Agency, § 262; 2 Am.Jur. 283, § 363, text and note 19; Gleason v. Seaboard Air Line R. Co., 278 U.S. 349, 49 S.Ct. 161, 73 L.Ed. 415. Concerning her actual knowledge that Ellis was himself the purchaser, the bill alleges:

"Whilst at the same time and with relation to the identical subject matter the said Ellis was actually trading with complainant to his own best interest and the best interest of his said employer the said Montgomery Real Estate & Insurance Company, and to complainant's damage, which fact he artfully concealed from this complainant. * * *

"That on to-wit, January 27, 1939, the said Thomas T. Ellis came to the residence of the complainant in company with a man whose name the said Ellis stated is Holiman and whose other further or different name is to the complainant unknown, who was represented to her by said Ellis as also being and who was in fact employed by the respondent Montgomery Real Estate & Insurance Company as its attorney and agent and said Ellis handed complainant a paper which paper the respondent Ellis said was a deed to complainant's said farm; that he, Thomas T. Ellis, whilst acting as said agent of Montgomery Real Estate & Insurance Company as aforesaid, represented to complainant then and there that the deed was for the purpose of making the trade for the Avondale property and advised complainant that she should sign same for her own best interest and profit as aforesaid and complainant says she relied upon the representations of said Thomas T. Ellis then and there and executed said deed, but says that when she executed the same she was not in the presence of or sight of any one except herself. * * *

"And complainant avers that she did not receive a deed to said Avondale property until to-wit: February 2nd, 1939, when said respondent Thomas T. Ellis delivered a deed purporting to be a deed to said Avondale property to her said daughter Rubye Lee Tollett at her place of employment at Kress Store in Birmingham, Alabama, and complainant avers that at the time said deed was so delivered to her said daughter the said Thomas T. Ellis stated in substance to her said daughter that he, Ellis, had just received a long distance call from Thorsby that the house on the farm there had burned down; that he, Ellis, had had a hard time getting the tenant on said farm out of possession and that on the 1st of February, 1939, he had put in possession of said property a man named Self and that the house on complainant's said farm burned that night of February 1st, 1939; and complainant says that said farm house was on the night of to-wit: February 1st, 1939, totally destroyed by fire. * * *

"And complainant further avers that on or about the 2nd of February, 1939, she discovered for the first time that at the time she executed said deed to said property set forth in Exhibit A that the grantee therein was not a third person but the respondent Thomas T. Ellis."

The bill was filed March 3, 1939. This shows that the house was burned and waste committed pending the negotiation of the transaction, and she did not know until after it was closed either that Ellis was himself the purchaser or that the house had burned.

On these averments the bill is consistent in alleging that at the time of the waste committed before the transaction was closed, Ellis was acting in the line and scope

of his employment, and that when she signed the deed she did not know that Ellis was the purchaser, although her deed is made to him. One may be bound by a deed without actual knowledge of its contents. The question here is knowledge of its contents, not its binding effect as a deed. The fact that her deed was made to Ellis is not conclusive that she had not real knowledge that it was so.

We cannot agree that the bill is multifarious, or that an adequate remedy exists at law against appellee so as to defeat the assertion of a claim in this suit for waste committed.

In Johnston v. Little, 141 Ala. 382, 37 So. 592, it was held that it was permissible to join in the bill as defendant a party to the fraud.

If appellee is liable for the waste, it is so because Ellis is also liable, arising from the fraud for which appellee is alleged to be responsible. This is therefore a joint and several liability for the waste if appellee is liable at all. There is no reason why such claim may not be litigated in this suit.

We have reached the conclusion that the demurrer should not have been sustained for any ground here discussed, and that the bill should not have been dismissed as to appellee.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.