58 So.2d 770

**MUTUAL SERVICE FUNERAL HOMES**
**v. FEHLER et al.**

**6 Div. 275.**

Supreme Court of Alabama.

April 24, 1952.

Rehearing Denied May 15, 1952.

Finis E. St. John, Cullman, for appellees.

Robt. Hutson and Russell W. Lynne, Decatur, for appellant.

FOSTER, Justice.

This is the second appeal in this case. The first was from a ruling on demurrer to the bill, and is reported in 254 Ala. 363, 48 So.2d 26.

The purpose of the bill is to enjoin the anticipated use of certain described property for a funeral home, upon the allegation that, if so used, it will create a nuisance in a wholly residential section of the city of Cullman. On former appeal it was held that the bill had sufficient allegations to show that a nuisance would be created. An answer was filed, and the case was tried on the issue made and a final decree rendered permanently enjoining appellant from operating a funeral home at the designated place. The present appeal is from that decree.

Assignments of Error 8 and 9.

The decree contained the statement that the cause was submitted upon an oral hearing of the evidence before the court, and that in addition to such evidence the court visited and observed the area in question. This means of course that the presiding judge viewed the area. There is nothing in the record to indicate that he gave notice of his intention to observe the area and that the parties and their counsel were notified or present.

Appellant is complaining on this appeal of that action of the trial judge in visiting the area and observing it without any notice to appellant or his counsel and without an opportunity of being present.

We have a number of cases in this State upon that subject. It is fully recognized by all the authorities that it is discretionary with the trial judge, who is sitting as a trier of the facts, to visit the scene of the *locus in quo,* if to do so would shed any light upon the controversy. In our case of Adalex Construction Co. v. Atkins, 214 Ala. 53, 106 So. 338, that question was considered. The decree in that case recited that the court, meaning the judge of course, without notice to or consent of the parties, examined the premises and buildings and inspected the area. It was insisted that in doing so there was error. This Court, in considering such contention, noted that it was within the power and discretion of the trial judge to do so: stating that it would assume that in making such inspection, in the absence of and without notice to the parties, the judge observed all the safeguards he would throw about a jury in making such inspection. But that it was the wise policy of the law to do so in the presence of the parties or with an opportunity for them to be present, and commended that practice as a rule of judicial propriety. In our cases it has not been required that the parties be notified or be present. But in most of them that policy was pursued. In some of the cases it does not seem to have been pursued, but the decree was not reversed because of such failure. Faught v. Leith, 201 Ala. 452, 78 So. 830; Jenkins v. Steel Cities Chemical Co., 208 Ala. 643, 95 So. 22; Watt v. Lee, 238 Ala. 451 (20–21), 191 So. 628; Fuller v. Blackwell, 246 Ala. 476, 21 So.2d 617; Monroe Bond & Mortgage Co. v. State ex rel. Hybart, 254 Ala. 278, 48 So.2d 431. We find no reversible error as here claimed.

Assignment of Error 11.

Under this assignment of error it is pointed out by appellant that the record shows from the evidence introduced that two of the complainants named in the suit died subsequent to its institution and before the rendition of the decree, and no account had been taken of that, except it is shown by the testimony reported by the court reporter, in that, there was no revivor with reference to either of them and their death was not suggested or noted upon the record except in the testimony. That the final decree was in their favor as well as in favor of the other complainants and, therefore, the decree is void.

■ Section 153, Title 7, Code, among other things, provides that upon the death of a party it may be so suggested upon the record and the action proceed in the name of or against the survivor. This statute has no application however to suits in equity. Fearn v. Ward, 80 Ala. 555, 2 So. 114.

■ Rule 35 of Equity Practice, Code 1940, Tit. 7 Appendix, embraces the various statutes and rules theretofore existing having application to the subject of revivor in equity. There is no provision there shown designating the course to be pursued when only one of the complainants dies. So that, we are remitted in that situation to the general rules pertaining to the subject. In analyzing that question, it is necessary to take into consideration the nature of the equity claim and the respective interests of the complainants in it. In doing so, we note that this is a suit to enjoin a prospective nuisance by various property owners similarly situated, although not precisely so. Under such circumstances, several persons injured by a nuisance common to all may unite in seeking equitable relief and different property owners may join as complainants in such a bill. 46 Corpus Juris, 780; 66 C.J.S., Nuisances, § 124. On principles which apply to this situation, but applicable directly to creditors' suits, it has been held that such a suit does not abate on the death of one of the creditor complainants if one or more of them remains and prosecutes the suit to a final decree. 1 C.J.S., Abatement and Revival, § 121, page 170, note 31.

■ Appellant contends that regardless of that principle, a decree cannot be rendered in favor of a person who is dead at the time of its rendition, and that the two complainants being dead at the time of the rendition of the decree it was void because it was for their benefit jointly with the other complainants remaining as such. Of course the principle is well understood that a judgment in favor of or against a dead man is void absolutely. Griffin v. Proctor, 244 Ala. 537, 14 So.2d 116.

The question here is whether or not that principle applies where one or more of the complainants dies leaving other complainants, who have a right independently and without the dead complainants, to enforce the equitable right claimed. In the case of Ex parte Massie, 131 Ala. 62, 31 So. 483, 56 L.R.A. 671, this Court held that in an equity suit, where one of the material defendants in the case died before the rendition of the decree, the decree purporting to be against them both was void and should have been set aside on motion.

In the case of Chapman v. Chapman, 194 Ala. 518, 70 So. 121, there were two complainants seeking specific performance of a contract against a single respondent. Both complainants died before the submission of the cause. It was revived in the name of a person individually as an heir and as administrator of one of the deceased complainants. Nothing was done towards a revivor of the other complainant. There was a decree then rendered granting relief to the complainants. The Court held that the revivor was applicable to one complainant, wherein it was sought, but not with respect to the other complainant, and that heirs at law were necessary complainants. The Court did not hold that the decree was void, but because of imperfections with respect to the revivor, it was reversed to the end that the necessary parties complainant could be brought into court.

■ In this connection, we refer to Rule 67 of Equity Practice which authorizes a court of equity to render a decree in favor of one or more complainants without it being in favor of all complainants. This was a change of the rule existing before the adoption of the statute which was here made a rule. While section 153, Title 7, supra, may have direct application only to a court of law in this respect, it was a statement of a common law rule as pointed out in the case of Stoer v. Ocklawaha River Farms Co., 223 Ala. 690, 138 So. 270; Long v. Kansas City, Memphis and Birmingham R. R. Co., 170 Ala. 635, 54 So. 62.

■ While a decree in equity as well as a judgment at law must be in favor of a living person, we are inclined to the view

that, particularly in a court of equity in accordance with the principles above declared, where one or more of the complainants dies pending the suit and the rights of the other complainants are independent of those of the deceased, a decree favorable to the complainants, without having the record to note the suggestion of the death of those who died, will be referred to those who are living at the time of the decree as the complainants in it, and not as being in favor of those also who may have died and without a successor appointed and without even a suggestion made in the record of their death.

In the instant case the decree is that the complainants are entitled to the relief prayed. It is then ordered, adjudged and decreed that the respondent be restrained and enjoined as there indicated without further referring in the decree to the complainants or any of them.

■ We think it would be highly technical to reverse a decree for that reason if the remaining complainants are entitled to the injunction which the decree granted. We are therefore of the opinion that the eleventh assignment of error does not serve to reverse the decree rendered.

### Assignment of Error 5.

The question presented by this assignment of error is whether or not the finding of the court is sufficiently supported by the evidence to justify the injunction which was decreed. Very properly, the opinion of the court stated that there are three major issues of fact presented by this situation. The first is whether or not the area in question must have been zoned for residential purposes in order to justify the relief. The second is whether or not an injunction is proper when a funeral home is set up in an exclusively residential area of the city, not controlled by a zoning ordinance, if it is operated skillfully and diligently so as to avoid the creation of a nuisance as much as reasonably possible. The third question present is whether or not the particular area is residential within the meaning of the applicable principles of law.

■ As to the first question, the trial court correctly held that it is not necessary for the area to be zoned as a residential district in order to support the prayer for an injunction, if the proposal of the respondent is to create a nuisance.

■ With respect to the second question above posed in the opinion, the court stated the rule to be that no matter how efficiently a funeral home is operated it will not be allowed to locate in an exclusively residential area over the protest of those who reside therein and in the absence of a strong public necessity therefor. In support of the court's holding is cited the cases of Higgins v. Bloch, 213 Ala. 209, 104 So. 429; Higgins & Courtney v. Bloch, 216 Ala. 153, 112 So. 739; Laughlin, Wood & Co. v. Cooney, 220 Ala 556, 126 So. 864, and the opinion on former appeal in this case. To these authorities may be added, among others, White v. Luquire Funeral Home, 221 Ala. 440, 129 So. 84. So that particular question referred to in the court's opinion need not be further treated.

The third question is the one most controverted, and to which serious attention must be given. It is, was the area in question so devoted to residential purposes as to make the principle we have referred to applicable and require the injunction which was ordered in the final decree. It may be observed that there was no temporary injunction issued and, in the meantime and pending the suit, the appellant proceeded to put into effect its proposal to operate the premises as a funeral home and has been doing so, as shown by the evidence in the case, and has conducted it with the incidents described in the bill, such as might have been and were anticipated.

In this connection the bill alleges a detail of the purposes for which the area in question is used and the fact that it has been so used for at least fifty years. We held on former appeal that the allegations of the bill sufficiently show that the area in question is residential to the extent that the property owners and those living there are entitled to the benefits of the principle insisted upon. Upon that question much evidence was taken *ore tenus* before the trial judge and he also personally inspected

the area, resulting in a decree enjoining appellant from operating the funeral home as it is now doing.

■■■ It is not necessary to prove every detail of averment accurately as alleged. It is sufficient to prove enough of them to make available the principle relied on. Birmingham News Co. v. Little, 226 Ala. 642, 148 So. 398; Ellis v. Womack, 247 Ala. 254, 23 So.2d 859.

The area consists of several blocks laid off and used exclusively for residential purposes. The home in question was built by Mr. Young and used by him as a residence until he sold it and was used by his grantee in the same manner until he sold it to appellant. It is a large, handsome, home style, dwelling. Since it was built many homes have been located and used in the area in close proximity and in every direction from it, except to the west. Some in the same block, others directly across the street from it. It is on the outer edge and western part of the residential area. This area extends several blocks to the north and east, and several blocks to the south before industries are observed. The home in question is in the northwest corner of the intersection of Young Street, extending east and west, and Fourth Avenue, extending north and south. There are commodious residences on each of the other three corners. To the north on Fourth Avenue, a few blocks away, is the high school and on beyond are dwellings. Extending east on Young Street there are a number of residences. Extending south on Fourth Avenue toward the business center for a distance of about two blocks, the same is true. On Young Street extending west on the same block there are no buildings. The location of Third Avenue is not open. But from about where it would be looking toward Second Avenue is a steep decline, and the space intervening to Second Avenue is used as a lumber yard. On the south side of Young Street, on the corner where it intersects Second Avenue, is a sawmill and adjoining it is a lumber yard. Young Street does not cross Second Avenue, but at such location going west is a canning factory. On Second Avenue, north and south, there are various enterprises. These are all on a lower level from Fourth Avenue, and hardly visible from it. Second Avenue is a main route from the business center on the south and by the high school to the north. Most of the enterprises on Second Avenue in the area in question are on the west side.

■■■ A residential area must have a boundary. Outside of that boundary, it is not residential and not entitled to its benefits. Inside of that boundary, as a residential district, it is entitled to the benefit of being free from disturbing business enterprises situated in it. The residence in question, built for a home and always used as such, was shown to have been influential in the location of other homes near by. They are all toward the north, east and south, not toward the west. Many of them are in very close proximity to the funeral home. But there are a sawmill and other enterprises two blocks to the west of this area on a lower level and hardly visible from it.

We get all of this from the evidence and pictures taken of various locations of the area, including aerial photographs of the whole layout, and from it we judge the situation. But even so, it cannot be done with the same degree of satisfaction as if we could view the location personally. We could then better see and hear its effect and that of the industries on Second Avenue, and farther down Fourth Avenue where there is a hospital. The pictures introduced in evidence show a beautifully shaded area which was designed and laid out for homes.

■■■ The trial judge not only had the evidence taken before him but also made a personal inspection of the situation. There was not much conflict in the testimony as to the physical facts. The witnesses chiefly differed in appraising the effect of such home on the residents and whether the area is an exclusively residential district. We think it should be so considered. The home in question is on the outer edge of the area, but within it, and in close proximity to other homes some of which are also on the outer edge. The location of industries outside of that

district does not justify the location of a disturbing industry in it.

 Under such circumstances in order to reverse, there must be a strong showing of error which would be sufficient to vacate the verdict of a jury to that effect. Faught v. Leith, 201 Ala. 452, 78 So. 830; Jenkins v. Steel Cities Chemical Co., 208 Ala. 643, 95 So. 22; Fuller v. Blackwell, 246 Ala. 476, 21 So.2d 617; Monroe Bond & Mortgage Co. v. State, ex rel. Hybart, 254 Ala. 278, 48 So.2d 431.

It is not necessary that the injunction be sought before the property is acquired. Jackson v. Downey, 252 Ala. 649, 42 So.2d 246.

We think this situation does not require a reversal. The decree of the lower court is therefore affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and STAKELY, JJ., concur.