89 So.2d 70

**Roy HAMMAC**

v.

**Bert SKINNER et al.**

2 Div. 365.

Supreme Court of Alabama.

May 24, 1956.

Rehearing Denied Aug. 2, 1956.

Pitts & Pitts, Selma, for appellant.

**10**

Pettus, Fuller, Reeves & Stewart, Selma, for appellees.

PER CURIAM.

On this appeal the important question is whether the bill in equity shows a right of complainants on the rescission of a transaction to recover expenses which they incurred in preparing to utilize the property purchased.

Complainants, to whom we will refer as appellees, and respondent to whom we will refer as appellant, made an agreement, exhibit A to the bill of complaint, which is as follows:

"Jan. 15th. 1953.

"Mr. Bert Skinner
"Mr. Charles Skinner,

"Gentlemen:

"This is to acknowledge receipt of Ten thousand dollars ($10,000.00) paid to me this date by you to apply on purchase of and to guarantee that you will purchase one half (½) interest in the tract of timber and land in process of being purchased by me in the Republic of Panama, known as the Las Valietes tract on the Caribbean Sea, consisting of 164,749. acres more or less. In the event I fail to get deed as expected which would put me in position not to be in position to deliver you a deed within forty five days or an agreeable time thereafter I will return the deposit of $10,000.00, which will cancel all obligations. At the time it (sic) possible for me to deliver you deed for the ½ interest in the above mentioned tract the purchase price for the one half interest is $123,561.75 one hundred twenty three thousand

five hundred sixty one dollars seventy five cents. You to pay the amount of $50,000.00 on receipt of deed and make a satisfactory mortgage for the balance of $63,561.75 for a period of one year after date of purchase at the rate of 5% interest.

"Respectfully yours,
"/signed/ Roy Hammac
Roy Hammac

"Accepted
"/signed/ Bert Skinner
Bert Skinner
"/signed/ Charles R. Skinner
Charles R. Skinner."

The $10,000, above mentioned, was paid. It was later agreed for appellee to pay the sum of $28,000 cash and execute a note for $22,000. Appellees also executed another note in the sum of $63,561.75. Those notes were executed on May 5, 1953. To secure the note for $63,561.75 appellees, on May 18, 1953, executed a mortgage on a half interest in certain property. In July 1953 appellant advised appellees that he was unable to get good title to the tract referred to as the "first tract", and could not consummate the trade, but that he had located a "second tract" which he could purchase for their joint interest; that the purchase price would be $2,000 more than the purchase price of the "first tract", which he would pay and that appellees would be obligated to pay the same amount as for the "first tract," $123,561.75 for a half interest and to be paid in the same manner, that is, $38,000 cash already paid, a promissory note for $22,000, and a note for $63,561.75 secured by a mortgage on a half interest in the "second tract". Appellees agreed to the arrangement to purchase the "second tract," and they executed a new note dated July 11, 1953, and a mortgage of the same date on a half interest in the "second tract". The former note and mortgage, dated May 5, 1953 and May 18, 1953, respectively, were returned to appellees. Appellant still holds the note and mortgage of July 11, 1953. Appellant then delivered to appellees a full warranty deed dated July 11, 1953, purporting to convey to appellees a half interest in the "second tract".

Paragraphs 10 and 11 of the amended bill of complaint are as follows:

"Thereafter, in, to wit: October, 1953, complainants first learned, and complainants do allege and aver, that the representations made by respondent to complainants that the purchase price of said 'second tract' was in excess of $247,123.50 were false and untrue; and complainants do aver that the representations made to complainants by the respondent that respondent was paying for the joint account of complainants and respondent a sum in excess of $247,123.50, for said 'second tract,' were false and untrue; and complainants then learned, and they do so aver, that the representation made by the respondent to the complainants that the cost to complainants of $123,-561.75 for the undivided one-half interest in said 'second tract' was false and untrue; that said misrepresentations were misrepresentations of material facts, and complainants acted, relied upon and were induced by such misrepresentations to join with respondent in purchasing said 'second tract'; and complainant delivered to respondent their one-half of said sum of $247,123.50, in cash and notes, as hereinabove set forth, all to the prejudice and injury of complainants. * * *

"Complainants learned in, to wit: October, 1953, and they so allege, that the total purchase price of the real estate herein referred to and described as the 'second tract,' was the sum of

$50,000.00 only, rather than the sum of approximately $2000.00 more than $247,123.50, as represented by the respondent to the complainants. Complainants were deceived and misled by the said misrepresentations made by the respondent to the complainants; that said misrepresentations were misrepresentations of material facts, and complainants acted, relied upon and were induced by such misrepresentations to join with respondent in purchasing said 'second tract'; and complainants delivered to respondent their one-half of said sum of $247,123.50, in cash and in notes, as hereinabove set forth, all to the prejudice and injury of complainants. Complainants further aver that the representation made to them by the respondent that said lands were being purchased for the joint interest of complainants and respondent, free and clear of all liens and encumbrances, was false and untrue; and complainants aver that of the total purchase price of $50,000.00 for said 'second tract,' the respondent paid only the sum of $10,000.00 in cash, and executed a purchase money mortgage to the sellers in the sum of $40,000.00."

Paragraphs 9 and 16 of the bill of complaint are as follows:

"Thereafter, complainants were advised by the respondent that he had completed the purchase of the real estate referred to as the 'second tract'. It had been agreed between the parties that after the respondent had completed the purchase of said real estate for the joint interest of complainants and respondent, that complainant, Bert Skinner, was to move his family to Panama, and that said complainant was to handle logging operations on said lands for the mutual account and interest of complainants and respondent. As a result of the representations made by the respondent, and in reliance thereon, said complainant, Bert Skinner, did make definite plans for moving himself and his family from Camden, Alabama, to the Republic of Panama.

(16) "Complainants claim of the respondent the further and additional sum of Six Thousand ($6,000.00) dollars, as damages, sustained by them on account of said misrepresentations of respondent as aforesaid, in that said complainants were put to the expense of making two trips to the Republic of Panama, to the payment of freight on furniture shipped back from the Republic of Panama to Camden, Alabama, for repairs on a portion of said furniture which was damaged either in shipment to or from Camden, Alabama, to the Republic of Panama, together with interest on money borrowed by complainants for the purpose of making said cash payments of $38,000.00. All of said expense to the complainants was the proximate result of the false representations made by the respondent, as aforesaid, to the complainants, which false representations were relied upon and acted upon by the complainants to their prejudice, as aforesaid. Complainants do hereby offer to return unto the respondent the said deed, dated July 11, 1953, copy of which is attached hereto as Exhibit 'D', and complainants do hereby offer to reconvey said real estate to the respondent, upon such terms and conditions as may be prescribed by this Honorable Court."

Paragraph 14 of the bill is as follows:

"Complainants, after learning of the false representations made to them by the respondent, did then and there rescind said contract, and did demand that the respondent return to them their money and property so paid and delivered to him, viz: the sum of $38,000.00 in cash, said note dated May 18, 1953, in the sum of $22,000.00, and said note and mortgage, in the sum of $63,561.75, each dated July 11, 1953; and complainants did tender and offer

to return to said respondent the deed to the 'second tract,' a copy of which is attached hereto as Exhibit 'D'; and complainants did further offer to reconvey to respondent said real estate, upon return to them by respondent of their money and property. Respondent has wholly failed or refused to return to complainants their aforesaid money and property, viz: the sum of $38,000.00 cash, one note of complainants, payable to respondent, in the sum of $22,000.00, dated May 18, 1953, one note of complainants, payable to respondent, in the sum of $63,561.75, dated July 11, 1953, together with mortgage of complainants to respondent, dated July 11, 1953, securing said note of $63,561.75."

The prayer seeks the relief specified in paragraphs 14 and 16, supra.

■ On the facts alleged, it is clear that appellees are entitled to a rescission and cancellation of the transaction with a restoration to each of what he is entitled to recover as an incident to such result, all of which is available in this suit in equity. We do not understand that appellant controverts that result upon the basis of the facts alleged. The bill is well drawn and contains all the essential elements of fraud in inducing the execution of the contract by appellees, their right to rescind and cancel it on that ground and that they duly elected to do so. Calloway v. McElroy, 3 Ala. 406; Bullard Shoals Mining Co. v. Spencer, 208 Ala. 663, 95 So. 1; Wood v. Master Schools, 221 Ala. 645, 130 So. 178; Bullen v. Trulove, 224 Ala. 677, 141 So. 671. The bill as a whole is not subject to any ground of demurrer insisted on.

The chief contention is whether having elected to rescind and cancel the transaction for fraud in its inducement, appellees can recover the amount of the expense incurred by one of them in going to the Republic of Panama and shipping his household effects there (and return) in preparation of using the land as contemplated and agreed should be done by appellees.

■ In this connection it is well settled that in a suit for rescission and cancellation general damages for deceit or fraud may not be recovered by the defrauded party, but there are claims which may be recovered such as waste and other claims necessary to a restoration of the status quo, Tollett v. Montgomery Real Estate & Ins. Co., 238 Ala. 617, 193 So. 127, including expenses incident to the contract, 17 C.J.S., Contracts, § 442, p. 926, note 73; Sidney Stevens Implement Co. v. Hintze, 92 Utah 264, 67 P.2d 632, 111 A.L.R. 331; Sylvania Industrial Corporation v. Lilienfeld's Estate, 4 Cir., 132 F.2d 887, 145 A.L.R. 612, Judge Parker; Equitable Life Assur. Soc. of United States v. Kushman, 276 N.Y. 178, 11 N.E.2d 719. But there is a difference of opinion whether the nature of the expense here involved is one which is incidental to the contract and recoverable, or is an item of damage which is solely recoverable in an action of deceit.

■ The ruling of the trial court was favorable to appellees by the decree overruling the demurrer to that aspect of the bill as well as to the bill as a whole. We may pause here to observe that usually the claim of an item of damage in a suit in equity does not render it subject to demurrer though the claim is not shown to be recoverable. This is not a suit for damages, but only a claim of restoration to a status. This claim is controlled by a state of facts applicable to it alone. The parties have treated that feature of the bill as an aspect. We are not disposed to take a different view to reach an easy conclusion in this suit. We will therefore treat the merits of the claim.

Appellees rely on a principle which is thus stated in Black on Rescission and Cancellation, in section 695, page 1653, as follows:

"The right to rescind a contract being equitable, if damages as well as rescission are necessary to complete justice, both will be allowed. Hence if one is induced by false representations to en-

ter into a contract for the purchase of land, he may disaffirm and rescind it, or he may affirm it and sue for the difference between the value of the land as it was represented and as it was. And his election to rescind will prevent him from recovering damages for such difference. *But it will not prevent him from recovering, in addition to the rescission of the contract, money expended in attempting to utilize the land before discovering the falsity of the representations".* (Italics supplied.)

The above authority cites the case of Holland v. Western Bank & Trust Co., 56 Tex.Civ.App. 324, 118 S.W. 218. We find that case fully supports the text and we quote from it as follows:

"It is sometimes said that, when a contract is procured by fraud, the defrauded party has his choice of two remedies, one being rescission and the other damages, and that he cannot assert both. That statement is too broad, and the restriction stated has no application, and should not be made, when both rescission and damages are necessary to make the defrauded party whole. For instance, in this case, the plaintiff had the right either to disaffirm and rescind the contract, or affirm it and sue for the difference in the value of the land as fraudulently represented and as actually existed; but he was not entitled to both those remedies, and his action for rescission cut him off from the right to maintain an action for the difference in the value of the land. But his petition went further, and alleged that, on account of the fraudulent conduct referred to, *he had been induced to incur certain expenses in attempting to utilize the land.* If the consideration paid by the plaintiff for the land be refunded to him, or his obligations for the purchase money be canceled, of course, it would not be fair and just to allow him damages on account of any difference in the value of the land. In that regard, and in so far as that phase of the case is concerned, cancellation will make him whole; *but not so as to the special damages sought to be recovered.* Restoring to him the consideration paid for the land would not restore to him the money which *he alleges he expended in attempting to utilize the property.* Rescission is an equitable remedy. Complete and full justice is a fundamental doctrine of equity jurisprudence, and if damages, as well as rescission, are essential to accomplish full justice, they will both be allowed. Of the cases cited by the respective attorneys in this case, Wintz v. Morrison, 17 Tex. 372, 67 Am.Dec. 658, is nearest in point, and that suit was based and sustained upon the doctrine just announced." (Italics supplied.)

On the other hand, there are cases cited by appellant which seem to conflict and reach a different result. In the case of Carpenter v. Mason, 181 Wis. 114, 193 N.W. 973, 974, there was no agreement to cover such an expense above referred to. We quote as follows:

"As already indicated, this was an action for rescission. In an action for rescission where the judgment grants the relief prayed for, the parties should be placed as nearly as possible in statu quo. This does not mean that the parties are to be restored to the situation which existed previous to their entering into the contract. It means that their rights in respect to the property, which forms the subject-matter of the suit, are to be placed in statu quo. *The plaintiff in this case has had the benefit of moving from Minnesota to Wisconsin. The contract did not require him to move from Minnesota to Wisconsin. There is nothing to indicate that he has returned, or intends to return, to Minnesota.* If the plaintiff's theory is correct, the plaintiff would be entitled to recover not only the expense of moving to Wisconsin but the expense of returning to Minnesota, where he resided at the time the contract was

entered into. The theory upon which a court of equity acts is that the parties are to be restored, and each of them is therefore to return to the other such benefits as have accrued to them under the contract. The defendants received nothing from the plaintiff excepting the $100 paid upon the purchase price and the taxes. To require them to restore more than they received would be to permit the plaintiff to recover damages for breach of the contract. The plaintiff does not affirm the contract, but disaffirms it and seeks rescission. He may not do both. Knudson v. George, 157 Wis. 520, 147 N.W. 1003." (Italics supplied.)

And in Stanford v. Smith, 163 Ark. 583, 260 S.W. 435, 438, there was no agreement shown that the purchaser who resided in Arkansas would go to Texas and reside on the land; nor what use was intended to be made of the land. The court observed:

"Appellant Stanford insists that, in stating the account between the parties, certain damages which he sustained should be considered, chiefly the expense of removing to and returning from Texas, which expense, he says, exceeded the thousand dollars paid him by Smith. We think these damages are not recoverable. Stanford had the option to sue for these damages, and in that suit he could have recovered any damages he was shown to have sustained, but he has elected to ask rescission, and he cannot in a suit of that character have his property back and damages too."

There is a difference between the instant case and the cases relied upon by appellant. It is that the allegations of the bill, which we have quoted, make it plain that, as an incident to the agreement and a feature of it, the land was to be jointly owned by appellees and appellant and that one of the appellees was to move his family to the Republic of Panama and conduct the logging operations on said land for their mutual benefit, and that this expense was incurred pursuant to that agreement and before the fraud was discovered. So that, the expense was incurred as contemplated by the parties.

The Texas case, supra, and Black on Rescission and Cancellation, supra, do not make it necessary that the special damages be incurred pursuant to the intent of the parties to be recoverable on rescission. They make the distinction that general damages are not recoverable on rescission but that certain special damages are recoverable. We do not find it necessary at this time to take a position on that distinction for in this case the right to claim the amount of such expense is controlled by an agreement and the intent of the parties. In the Wisconsin case, supra, it is observed that there was no such agreement.

All we decide here is that we think the bill sufficiently shows a right to have restored to appellees the expense they incurred as alleged in paragraphs 9 and 16 of the bill of complaint and because of the facts there alleged. The name given to such claim in the bill is not controlling.

The decree of the trial court should be affirmed.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, § 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, STAKELY and MERRILL, JJ., concur.

### On Rehearing

Counsel for appellant are very urgent that we failed to give consideration to his contention as to paragraph 12 of the bill of complaint. That paragraph is as follows:

"Complainants have been informed, and they so allege that under the law of the Republic of Panama, that if they are the owners of an undivided one-

half interest in and to said real estate, they would not only take title to the same subject to said purchase money mortgage of $40,000.00, but, on the contrary, that they would be personally obligated for the payment of one-half of said balance of purchase money, viz: $20,000.00."

It is insisted that as a plea of the law of a foreign nation it is subject to the objection that it states a conclusion of the pleader and not the substance of the law itself as a fact. The form of the allegations may not be strictly up to the requirements of good pleading as interpreted in Equitable Life Assur. Soc. of United States v. Brandt, 240 Ala. 260, 198 So. 595, 134 A.L.R. 555, in not alleging what the law on the subject is in the Republic of Panama, but only what the effect of it is upon complainants as applied to the transaction involved. Counsel insist that as a feature of the charge of fraud its insufficiency renders the bill subject to demurrer as to that aspect of it charging fraud in procuring the contract. Properly considered the bill has but one aspect, to annul and vacate a transaction for fraud in its procurement. Other features of the bill are supplementary to that. We agree that if the allegations of paragraph 12 of the bill are essential to the charge of fraud, they ought to be well pleaded and that a failure in that respect would subject the bill to appropriate demurrer. We did not discuss that question because we thought, and still think, that the charge of fraud and its effect upon the transaction was complete without paragraph 12 as set out. All the elements of fraudulently procuring the contract from complainants are set out in the bill by the facts on which the charge is based, and they are sufficient and well pleaded without paragraph 12. "Sometimes it is necessary at law to prove all the allegations of a count to sustain the cause of action as laid. Mazer v. Brown, 259 Ala. 449(14), 66 So.2d 561. * * * But that is not to be confused with the principle well settled that in equity it is not necessary to accurately prove every detail of averment as alleged provided that proof is made of such averments as are essential to the relief sought". Bobo v. City of Florence, 260 Ala. 239, 69 So.2d 463, 465, citing Mutual Service Funeral Homes v. Fehler, 257 Ala. 354, 58 So.2d 770; Ellis v. Womack, 247 Ala. 254, 23 So. 2d 859. The older cases are cited in the above authorities. Since it is not necessary to prove the law of the Republic of Panama in the respect here material, it is not necessary for it to be alleged in the bill according to the requirements for pleading such a law. The bill is not subject to the demurrer interposed in that respect.

On the original submission we treated the chief controversy as we understood it and as fully as we thought necessary and feel like it was correctly disposed of.

The application for rehearing should be overruled.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, § 32, Code, and was adopted by the Court as its opinion.

Application for rehearing overruled.

LIVINGSTON, C. J., and LAWSON, STAKELY and MERRILL, JJ., concur.