305 So.2d 366

**Robert RIGSBY**

v.

**Ernest BURTON et al.**

**SC 937.**

Supreme Court of Alabama.

Dec. 19, 1974.

Culver & Miller, Huntsville, for appellant.

Stewart & Colvin, Anniston, for appellees.

MERRILL, Justice.

This is an appeal from an order enjoining the defendants, Eugene Ervin, d/b/a Ervin Funeral Home, and Robert Rigsby, from maintaining and using the premises at 1518 Brown Avenue, Anniston, for an undertaking establishment.

Eugene Ervin was the owner of the property located at 1518 Brown Avenue. The zoning laws of the City of Anniston allowed funeral homes in that area. Ervin entered into an agreement with Robert Rigsby whereby Rigsby would construct a funeral home on the property. As part of the deal, Ervin deeded the property to Rigsby with the understanding that the property would be reconveyed after repayment of the loan. Rigsby then secured a building permit and commenced construction in July, 1973.

The plaintiffs, Ernest Burton, Jerome Echols and Thomas Borden, on July 6, 1973, brought a petition for injunction against Eugene Ervin. After Rigsby testified at the trial, the petitioners amended their complaint to include Rigsby as a party since he was the owner of the property.

On October 11, 1973, the court issued its decree enjoining the maintenance or use of the premises as an undertaking establishment. The pertinent parts of the decree read:

"IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

"The neighborhood in question has been stable for thirty or more years, being used for private residence, a church, and one neighborhood grocery store.

"Some of the complaints, while resting in the mind or imagination, are no less real.

"The use of the premises as and for an undertaking establishment would sporadically congest the area, light up the area at night, cause persons and even crowds to come and go at odd hours, and would regularly cause apprehension, depress spirits, and reduce real estate values as and for residences. The character of the neighborhood would be changed from quiet and almost exclusively residential to busy and commercial. Sounds and odors might or might not be or become a factor.

"Let the proper injunction issue against the maintenance or use of the premises as and for an undertaking establishment."

A motion for a new trial was overruled.

There is no dispute but that the property is inside the corporate limits of Anniston, that it had a classification of R–3 when the building permit was issued in July, and that the R–3 classification at that time included an undertaking establishment as a permissible usage under the zoning ordinance.

■ Ordinarily, the owner of property may use it as he sees fit, provided it is not a nuisance, nor otherwise a hazard to the safety and well-being of others, and not in violation of regulatory laws within the police power, nor within the prohibition of zoning ordinances. Otherwise, he may select the nature, location and material for any structure he wishes to put on it for any legitimate purpose he desires. Davis v. City of Mobile, 245 Ala. 80, 16 So.2d 1.

■ The operation of a funeral home is not a nuisance per se. Priest v. Griffin, 284 Ala. 97, 222 So.2d 353; White v. Luquire Funeral Home, 221 Ala. 440, 129 So. 84. In the last cited case, this court said:

"As frequently declared by this court, a funeral home is not a nuisance per se in that sense. It is a lawful business, one quite essential to meet modern needs in many ways.

"But it must be regarded as settled in this jurisdiction that a funeral home located in a distinctly residence district may be and often becomes subject to be abated as a nuisance to those whose residences are in immediate proximity thereto.

\*   \*   \*   \*   \*   \*

" \*   \*   \* We merely add that this court has followed the line of cases declaring the funeral home, in the nature of it, may become and often does become a nuisance when located in close proximity to residences which are themselves located in a district devoted to residence purposes. (17 citations omitted.)"

■ Here, there was no evidence that Ervin, who had been and was presently operating a funeral home at another location, was operating it so that it would be a nuisance and none of the testimony based on objectional operation was based on Ervin's operation. The chief objection, other than the fact that some neighbors did not want the funeral home near their property, was the narrowness of Brown Avenue. The testimony was that it was barely wide enough for three automobiles abreast. A few neighbors did not object. At the time of trial, there had been no operation of the funeral home on Brown Avenue because the building had not been completed.

Appellees rely chiefly on two cases, Mutual Service Funeral Homes v. Fehler, 254 Ala. 363, 48 So.2d 26, and the same case, 257 Ala. 354, 58 So.2d 770. The first appeal was from a decree overruling the demurrer to the bill. The averments of the bill showed that a residence was being converted into a funeral home in an exclusive and long-established residential district. This court held that, on demurrer, the allegations are admitted and that the demurrer was properly overruled, under the rule that while the business of conducting funeral

parlors is lawful and necessary, its inherent nature is such that if located in a residential district it will inevitably create an atmosphere detrimental to the use and enjoyment of residence property, and will produce material annoyance and inconvenience to the occupants of adjacent dwellings, and render them physically uncomfortable, and in the absence of a strong showing of public necessity, its location in a residential district should not be allowed.

The second appeal in *Fehler*, 257 Ala. 354, 58 So.2d 770, was from a decree after a hearing on the merits. This court reiterated the rule that no matter how efficiently a funeral home is operated it will not be allowed to locate in an exclusively residential area over the protest of those who reside therein and in the absence of a strong public necessity therefor. That case turned on the question of whether the particular area was residential within the meaning of the applicable principles of law. The trial court inspected the premises and decided it was an exclusively residential district. This court agreed and affirmed. Here, the testimony is without dispute that this is not an exclusively residential neighborhood. A grocery store and a church are in the immediate vicinity of the proposed location, a wig shop is in the same block, and one block away from the proposed funeral home were stores and businesses.

Since the evidence does not show that it is an exclusively residential area and the zoning ordinance permitted a funeral home in areas classified R–3 at the time the building permit was issued, and since there was no evidence that it was a nuisance, we are unable to sustain the decree of the trial court. It may be that the trial court was influenced by the fact that in September, after the building permit had been issued in July, and the construction had begun, the City of Anniston removed funeral homes from the R–3 classification and at the time of the trial the operation of a funeral home was not permissible under the R–3 classification. The record shows the following excerpts relating to this matter:

(Cross-examination of witness Borden):

"Q Do you know what the usage for R–3 zoning classifications are?

A Yes, sir.

Q Do you know that one of the uses is for an undertaking establishment?

A It was. It's not now.

Q Well, it was at the time of the building permit, wasn't it?

A Right, but it had been put on the books in 1972."

(Direct examination of witness Bagley):

"Q Do you know this lot is located at 1518 Brown Avenue—do you know what the zoning classification of that lot was at that time?

A Yes, sir.

Q What was it?

A R–3.

Q Is one of the permissible usages under that classification the carrying on of an undertaking establishment?

A Yes, sir.

Q Mr. Bagley, let me ask you one other thing: They had zoning laws here in September of '71 that are no longer in effect, are they?

A No, sir.

Q Since when?

A September 25th.

Q That was September 25th of this year?

A Yes, sir.

Q Now, in July of this year when you granted Mr. Ervin a building permit to construct the funeral home out

there on Brown Avenue the zoning laws were in effect; is that correct?

A   These was in effect, yes, sir.

\*   \*   \*   \*   \*   \*

"THE COURT: I think we can assume that without changing the case. In any way, the suit was filed in July and the building was built under a permit issued under a former zoning ordinance. \* \* \*

\*   \*   \*   \*   \*   \*

"THE COURT: The latest ordinance in September would prohibit this type use in that area, but the building was built in July."

Reversed and remanded.

HEFLIN, C. J., and HARWOOD, MADDOX and FAULKNER, JJ., concur.