233 So.2d 233

**Theodore BLOCKER et al.**

**v.**

**Floride G. LOWRY.**

**8 Div. 333.**

Supreme Court of Alabama.

March 19, 1970.

Hopper & Hornsby, Huntsville, for appellants.

Smith, Johnston & Walker, Harvey B. Morris, Huntsville, for appellee.

MADDOX, Justice.

The appellants, Theodore Blocker, Harold Pizitz and Henry Marsh, were purchasers under an executory contract to convey 160 acres of land owned by the appellee, Floride G. Lowry, and her late husband. The contract called for dividing the 160 acres into 5 tracts of approximately equal acreage and the parties agreed that the purchasers would pay for tract 1 on or before June 1, 1961, and the sellers would give them a warranty deed. The purchasers were to arrange for a survey and description of the tracts in each instance. On June 1 of each year after 1961 the purchasers were to pay for an additional tract and the sellers were to convey. A grace period of 90 days after June 1 of each year was given within which purchasers could pay for each respective tract. During the time before a dispute arose between the parties, 3 tracts were conveyed to the purchasers. Small sections of tracts 4 and 5 were conveyed before the actual date of performance, but there was evidence from which the trial judge could find that these conveyances were by mutual agreement of the parties and did not otherwise change the legal status of parties under the contract.

The controversy which is the subject of this appeal arose with regard to tract 4. Under the contract the purchasers had agreed to pay for tract 4 on or before June 1, 1964. The 90-day grace period extended the time within which purchasers could perform until August 30, 1964. The purchasers were required to get a survey and description of each tract prior to the date for performance. Purchasers' own evidence shows that an engineer's survey was not ordered by them until July 9, 1964, some 38 days after they had agreed to perform. In fact, the surveyor's description was not available as late as August 21, 1964, when Marsh wrote to William H. Johnston, sellers' attorney, as follows:

"This will act to confirm the writer's verbal request made by telephone some weeks ago., [sic] and again yesterday to you, that we as above captioned desire to proceed with the purchase of that parcel of land that is required in accord with option agreement with Mr. & Mrs. Lowery. Sometime ago, when we requested the taking up of this portion of the option, Martin Phillips of G. W. Jones & Sons, were [sic] instructed to proceed with the description of same. However, on checking with them this date, we find nothing had been done on this work, and they are now proceeding to act.

"Please be assured, that I personally will follow this up with Mr. Martin Phillips and have them deliver the description to you at the earliest possible moment."

Attorney Johnston answered Marsh's letter as follows:

"This will acknowledge receipt of your letter concerning your intention to exercise your option with Mrs. Lowry. Of course, she is only interested in seeing that you fulfill the contract in accordance with the provisions thereof.

"As you know, this was due on June 1, 1964, and you are already two and one-half months late. Mr. (Samuel) Lowry (Mrs. Lowry's son and attorney-in-fact) is in town and I would suggest that you take steps to immediately close this sale."

Mr. J. Tate Lowry, who executed the original contract along with his wife, was deceased at the time this dispute arose. Mrs. Floride Lowry was in a nursing home and her son, Samuel Lowry, a Colonel in the United States Air Force, was given a power of attorney by her, which power was filed of record in the Probate office in Madison County on April 15, 1964.

Purchasers did not contract Samuel Lowry until September 1, 1964, at which time Lowry told them that he had declared the contract void and a letter was in the mail to that effect. He told the purchasers that they would have to discuss further questions with attorney Johnston. After their meeting with Lowry, the purchasers on September 1, 1964, mailed bank money orders to Lowry covering the purchase price of tract 4. Lowry returned these to the purchasers.

The time for performance for tract 5 was June 1, 1965. Purchasers mailed cashier's checks to pay the purchase price of tract 5 to Lowry on June 15, 1965, after the date specified for performance, but within the 90-day grace period set out in the contract. Lowry returned these checks also, claiming that the *entire contract* had been cancelled and declared null and void, at the option of the seller, when purchasers failed to perform as agreed with regard to tract 4.

Appellee Floride Lowry was the initial mover in this matter. She filed her original bill for declaratory judgment on September 30, 1965—more than a year after the events surrounding the dispute with regard to tract 4. Appellants filed a demurrer to the complaint on January 27, 1966, but a hearing was not held on the demurrer until January 13, 1967, almost a year after its filing. The court overruled the demurrer and allowed appellants 20 days within which to file an answer. A decree pro confesso was entered against the appellants

on February 3, 1967, for failure to file an answer as required, but was subsequently set aside by the court.

Appellants then filed their answer and cross-bill, generally denying the allegations of the original complaint and asking for specific performance of the contract—this occurring over two and one-half years after the performance date for the purchase of tract 4 under the terms of the contract.

■ We note that appellants referred to the contract as an "option." The letter from Marsh to attorney Johnston, quoted above, makes this reference to the contract as an "option." When the contract was filed of record in the Probate office, an attorney made the following certificate:

"The instrument heretofore setout [sic] has been drafted and is intended to be an *option.* * * *" (Emphasis ours)

The references made to the instrument as an "option" cannot make the agreement an option, but it does have probative value on the question of the intent of the parties with regard to the exact nature of the agreement.

The issue to be decided is whether the seller had a legal right to cancel the entire agreement upon the failure of the purchasers to perform when agreed, and within the 90-day grace period provided by the contract.

Appellants say this was an executory contract for the sale of land and when a purchaser under such a contract fails to pay in accordance with the contract, a court of equity will not foreclose the equity of the purchaser by declaring it forfeited or ended if the purchaser pays the balance owed to the seller within a reasonable time as fixed by the court decree. To this argument, the appellee says that the terms of the contract control, and that the court found that time was of the essence of the contract and that the court properly found that the seller had an option to declare the entire contract null and void when the purchasers failed to pay as agreed.

In a lengthy decree, which we will summarize, the trial court found that time for performance was of the essence of the contract, that the contract provided that failure of performance by the purchasers of any of the covenants and agreements would constitute a forfeiture of the contract, at the option of the sellers. In making this finding the court set out paragraph 12 of the contract which provides:

"TWELFTH: In the event of the failure of the Buyers to do and perform any of the covenants and agreements undertaken by them herein and such default shall continue for 90 days, this contract shall become, and it is hereby made a lease of the above described property from the Sellers to the Buyers, and all payments made by the Buyers prior to default are hereby made a rental of said property except lands already conveyed to the Buyers; and this contract shall thereupon, at the option of the Sellers, be forfeited and determined and terminated and all monies paid by the Buyers shall be retained by the Sellers as full satisfaction and liquidation of all claims hereunder and the Sellers, their heirs and assigns, shall thereupon have the right to re-enter and take possession of the property described, without demand or notice to the Buyers, their heirs or assigns."

The court also found that it was required to enforce the contract as written, and under the terms of the contract the purchasers should have tendered the purchase price for tract 4 on or before midnight, August 30, 1964, and having failed to do so, the sellers were entitled to terminate and cancel the entire contract.

■ Appellants contend also that the sellers had waived the right to insist on strict performance by failing to insist on such strict performance in prior years. Evidence was introduced showing a failure of sellers to insist on strict performance in prior years, but the court found no such

waiver with regard to tract 4. The court said that with regard to tract 4 the sellers had put the purchasers on notice that they would insist on strict performance. We think the court was not in error in making this finding.

The court did find that under the contract the purchasers were entitled to conveyances of small acreages in tracts 1, 2 and 3 and that the purchasers had overpaid, on prior transactions under the contract and before termination, the sum of $9,927. The court ordered these adjustments to be made. The court's finding and declaration regarding these adjustments in acreage and money due were appropriate since this was a declaratory judgment proceeding, but these findings do not affect, and are not inconsistent with, other parts of the decree which declare the contract cancelled.

■ The appellants are correct in asserting that generally, unless so stipulated, time is not regarded as of the essence of an executory contract for the sale of land. Mitchell v. Walker, 235 Ala. 458, 179 So. 633 (1938). We cannot, and need not, enumerate all of the situations wherein time can be of the essence of a land sale contract, but we think the trial judge had sufficient facts before him to justify his finding that time was of the essence of the contract here. The record shows that the price of the land had fluctuated in price from $1,000 per acre to $15,000 per acre and that after default and within the 90-day grace period the purchasers were notified in writing that strict performance of the contract was expected by the sellers. The trial court's order is consistent with our decisions which hold that if the subject matter of an executory contract of sale is one of rapidly fluctuating value, time is ordinarily regarded as of the essence. Isom v. Johnson, 205 Ala. 157, 87 So. 543 (1921); see also Lauderdale Power Co. v. Perry, 202 Ala. 394, 80 So. 476 (1918).

■ Under the terms of the contract which the parties made, the sellers had the right to avoid the sale, at their election, upon the default of the purchasers which continued for more than 90 days after the date of performance. Cf. Jones v. Hert, 192 Ala. 111, 68 So. 259 (1915); George E. Wood Lmbr. Co. v. Morris, 225 Ala. 281, 142 So. 508. Where a contract for the purchase of land provides that the seller may declare a forfeiture in the event of non-payment of the purchase money, a declaration of forfeiture after the default will put an end to the interest of the purchaser, and where time is of the essence of the contract the seller is at liberty to act as if the contract had ceased. Parties may make time material to the contract, the purpose of time limitations in a contract for a conveyance being to avoid speculation by either the seller or purchaser on the rise or fall of the value of property before choosing to perform.

■ The appellants correctly state the general rule that to rescind a land sale contract for the failure of the other party, the party complaining of such failure must call upon the other to perform and give him a reasonable time after notice in which to comply or be foreclosed. Wilson v. Thompson, 255 Ala. 165, 51 So.2d 20 (1951), and cases there cited. But this rule does not apply when time is of the essence of the contract.

■ As a general rule, under an executory contract for the sale of land, the contract of itself operates as a transmutation to the vendee of the possession, entitling him to the right of entry and enjoyment, but if the contract contains stipulations to the contrary, as the contract does in this case, then this general rule does not apply. Wilson v. Thompson, supra.

We find it completely unnecessary to discuss or distinguish our cases which hold executory contracts for the sale of land to be in the nature of mortgages. Neither is it necessary to discuss situations in land contracts giving rise to a vendor's lien. This case turns solely on the contract which the parties made.

We might point out that as to tracts 4 and 5, the contract made no provisions for payment of a part of the purchase price for tracts 4 and 5 and the purchasers were not put into possession. The interests of appellants in tracts 1, 2 and 3 which had previously been conveyed to them under the terms of the contract were in no wise affected, and the sellers were not attempting to impress a vendor's lien upon any of the tracts. As we view it, before the termination of the contract the only interest which the purchasers had in tracts 4 and 5, under the provisions of the contract, was a right to purchase within a specified time. Having failed to exercise their right to purchase within the time set out in the contract, time being of the essence of the contract, they cannot now come into equity and ask that a new agreement be made for them.

The appellant's argued assignments of error fail to convince us that the trial court was in error. The judgment of the court is therefore affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON, MERRILL and HARWOOD, JJ., concur.