ROBERTSON, Presiding Judge.
Jeff Green (hereinafter “Mr. Green”) and L. Kirby Green appeal from a judgment of the Baldwin County Circuit Court declaring Nick Hemmert (hereinafter “Mr. Hemmert”) and Elsie Hemmert to be the lawful possessors of a parcel of real property with respect to which Mr. Green had defaulted in making monthly installment payments for its purchase, and declaring Mr. Green’s prior purchase payments to the Hemmerts to be rent for his prior use of the property. We affirm in part, reverse in part, and remand.
As amended, the Hemmerts’ complaint alleged that they and Mr. Green entered into a contract on or about February 20, 1987, whereby Mr. Green would purchase a parcel of real property in Baldwin County for $10,-000 plus 11% • interest, to be paid in 156 consecutive equal monthly installments of $120.76. The Hemmerts further alleged that Mr. Green defaulted by failing to make five monthly payments, and they requested that the trial therefore declare them to be released from the contract and to have the *393 immediate right to retake possession from the Greens. The Greens answered and counterclaimed for possession of the property, paying into court the remaining principal and interest due under the contract and requesting the trial court to order the Hemmerts to convey the parcel to L. Kirby Green. The Hemmerts’ response to the counterclaim reiterated that they were seeking to “require [the Greens] to forfeit all rights to the property and to forfeit possession thereof.”
After a nonjury trial, the court entered a judgment in favor of the Hemmerts, awarding them possession of the property. The judgment also declared that all of Mr. Green’s payments “are to be applied as rent for the use of the property over the nine years that [the Greens], or one of them, have had possession of the property.”
After the denial of their post-judgment motions, the Greens appealed to the Alabama Supreme Court, which transferred the case to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
The evidence submitted at trial reveals that in December 1985 the Hemmerts entered into a contract with Jim Bow Moore and Roxane Moore to sell the subject real property to them for $10,000, payable in 156 consecutive equal monthly installments of $120.76, which amount included interest at 11%. Under this contract, the Hemmerts agreed to deed the property to the Moores after the Moores had paid the purchase price and all amounts due under the contract. The parties’ contract also contained the following provisions:
“In the event the Buyer shall fail for a period of thirty (30) days after they become due to pay any of the sums in this Contract agreed to be paid by the Buyer, either as installments or on account of interest, taxes, assessments, or to procure insurance, or should the Buyer fail to comply with any of the covenants or conditions of this Contract on his party [sic] to be performed ... then:
“(a) The Seller shall be released from all obligations in law or equity to convey said property to the Buyer;
“(b) The Buyer shall forfeit all rights to said property or to the possession thereof;
“(c) Seller shall have an immediate right to retake possession of said property; and
“(d) The payments theretofore made by the Buyer pursuant to this Contract shall be credited by the Seller to the reasonable rental value of said property during the period the Buyer had the use and occupancy of said property.
“(e) In lieu of the foregoing, the Seller, at his option, may declare, by notice to the Buyer, the entire unpaid balance of the purchase price specified in this Contract to be due and payable, and may be [sic] appropriate action, in law or equity, proceed to enforce payment thereof.
“(f) Any rights, powers or remedies, special, optional or otherwise, given or reserved to the Seller by this paragraph shall not be construed to deprive the Seller of any rights, powers, or remedies otherwise given by law or equity.
This contract bears the signatures of both the Moores and the Hemmerts.
After the Moores had made several payments, they decided to leave Baldwin County and concluded that they did not want the property any longer. James Williams (a neighbor of the Moores) agreed to assume the Moores’ position as purchaser under the contract; in 1987, Mr. Green indicated an interest in obtaining the property, and Williams agreed to allow him to assume the payments and acquire whatever interest Williams had in the land, in exchange for a transfer of a truck and cash for Williams’s claimed “equity” in the subject property.[1] Ultimately, Mr. Hemmert indicated his consent to the substitution of Mr. Green as purchaser of the property.
The evidence is in conflict as to subsequent events and as to the precise terms of the resulting contract between the Hemmerts and Mr. Green. Mr. Hemmert testified that Mr. Green agreed to abide by Williams’s contract with the Hemmerts, and Mr. Hem-mert’s real estate agent Dan Kinsey testified *394 that when Mr. Green approached him seeking to assume the payments on the property, Mr. Green had the Moores’ contract in hand (which was the same contract as the one Williams had assumed) and knew everything about it.[2] At trial, Mr. Green denied having seen the Moores’ contract and stated that he had assumed that the Hemmerts or Kinsey would draw up a new contract in his daughter’s name. However, Mr. Green also testified that Mr. Hemmert refused him permission to make yearly payments and that Mr. Hemmert had said that he preferred to “leave it like it was.”
Mr. Green began to make monthly installment payments, and either he or his daughter held continuous possession of the subject property for the next seven years. For most of that time, Mr. Green was three to four months behind on his payments to the Hem-merts. In January 1995, after Mr. Green had failed to pay seven monthly installments in a timely manner, Kinsey contacted Mr. Green by telephone and informed him that Mr. Hemmert “wanted his money” and was “going to foreclose” on the property. Mr. Green cured his arrearage by paying Mr. Hemmert for the last seven months of 1994. However, Mr. Green again fell behind in his payments for January and February 1995,[3] and on March 9, 1995, counsel for the Hem-merts notified Mr. Green that if he did not pay $5657.84, representing the remaining principal and interest components of the purchase price, in full within 10 days, counsel would “take all appropriate action to either enforce payment of this sum or to obtain possession of the premises.” Although Mr. Green tendered a partial payment of $379.28 via his counsel, the Hemmerts’ attorney refused this payment, and it was returned to Mr. Green before this action was filed.
Because the trial judge heard the evidence without a jury, our standard of review accords a presumption of correctness as to both the trial court’s factual findings and its judgment based upon those findings:
“We note that under the ore tenus standard of review, the trial court’s findings of fact based on oral testimony, and a judgment based on those findings, are given a presumption of correctness. A judgment based on such findings will not be reversed unless it is shown to be plainly and palpably wrong. Federal Home Loan Mortgage Corp. v. Bates, 644 So.2d 925 (Ala.1994). The appellate courts are not allowed to substitute their own judgment for that of the trial court if the trial court’s decision is supported by reasonable inferences to be drawn from the evidence. Ex parte Kent Corp., 641 So.2d 242 (Ala.1994). The reason for giving such deference to the trial judge’s findings based on disputed evidence in ore tenus proceedings is that the trial judge has the benefit of observing the witnesses’ manner and demeanor and has the better opportunity to pass upon the credibility of their testimony. Charles Israel Chevrolet, Inc. v. Walter E. Heller & Co., 476 So.2d 71 (Ala.1985).”
Ex parte Pielach, 681 So.2d 154, 154-55 (Ala.1996). Moreover, where the trial court does not make specific factual findings, this court will assume that the trial court made such findings as would support its judgment. Transamerica Com. Fin. Corp. v. AmSouth Bank, 608 So.2d 375, 378 (Ala.1992).
The Greens’ principal argument is that the trial court erred in concluding that Mr. Green agreed to be bound by the terms of a pre-existing contract that the Moores and the Hemmerts had signed. In order to resolve this issue, we consider whether there was credible evidence before the trial court for it to conclude that Mr. Green was ftdly aware of, and manifested consent to be bound by, the terms of the original contract between the Moores and the Hemmerts. Resolution of conflicts in the evidence is the province of the trial court, as the Alabama Supreme *395 Court so aptly held in Ikner v. Miller, 477 So.2d 387 (1985):
“There are two possible conclusions which could be drawn from the evidence presented in this case.... It is impossible to know with absolute certainty whose version of the facts was closer to the truth. There is a presumption underlying our system of jurisprudence, however, that the trier of fact is in a better position to judge the credibility of witnesses and to ferret out the truth than is an appellate court. Therefore, when cases are presented ore tenus, the court’s findings are entitled to a presumption of correctness and will not be disturbed on appeal unless plainly wrong or manifestly unjust. Seier v. Peek, 456 So.2d 1079, 1081 (Ala.1984); Johnson v. Jagermoore-Estes Properties, 456 So.2d 1072, 1075 (Ala.1984). We are not in a position to weigh the evidence, which is, in effect, what the defendant wishes for us to do. Since there was credible evidence to support the trial court’s findings, we must presume them to be correct.”
477 So.2d at 389. We conclude that the trial court’s determination is supported by the evidence and is neither plainly wrong nor manifestly unjust.
We next consider whether the printed contract between the Moores and the Hemmerts could legally be applied to Mr. Green without his signature thereupon. Generally, “[i]n the absence of a statute requiring a contract to be written or evidenced by writing, a valid contract may be partly written and partly oral.” 17A Am.Jur.2d Contracts § 183 (1991); accord, Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 304 (Ala.1986) (“a contract may consist of several communications between the parties, some in writing and some oral, each constituting a link in the chain which comprises the entire contract”). While a signature is proof of mutuality and assent, these may be shown in other ways. Id.
We note further that both parties have agreed that this case falls outside Alabama’s Statute of Frauds, § 8-9-2(5), Ala. Code 1975, by virtue of an exception thereto,[4] and partial payment and possession by Mr. Green (or his daughter) are undisputed facts in this case. Thus, there is no legal bar to enforcement of the printed terms of the contract. The question whether Mr. Green assented to the printed terms in the Moores’ contract of sale was a question for the trier of fact. Lawler, supra. As discussed above, the trial court’s determination that he did so assent is supported by the record in this case.
We next consider whether the trial court properly concluded that the Hemmerts had a right under the contract to retake the property after the nonpayment of one or more installments of the purchase price. The contract found by the trial court to be in effect between the parties contains alternative remedies upon breach of the buyer’s duty to pay. The Hemmerts had the right either to treat the contract as abrogated, so that they had no obligation to convey the property, or to declare the unpaid balance of the purchase price to be due and payable and to bring a civil action to enforce payment thereof. The contract specifically provides that any rights given to the Hemmerts in the event of breach are not to be construed to deprive them of any other rights, powers, or remedies they might otherwise have.
Where an installment land sales contract provides alternative remedies of termination or foreclosure, Alabama law allows the vendor an election of remedies between the two. They are said to be “alternative and inconsistent rights secured by the contract,” Rogers v. Gonzalez, 252 Ala. 313, 315, 40 So.2d 858, 860 (1949), and the Hemmerts’ exercise of their alternative right to resume possession of the land and to terminate the' contract in light of Mr. Green’s breach of his covenant to pay monthly rentals is settled. See, e.g., Nelson v. Sanders, 123 Ala. 615, 620-21, 26 So. 518, 520 (1899); Davis v. *396 Folmar, 203 Ala. 336, 83 So. 60 (1919); Blocker v. Lowry, 285 Ala. 448, 233 So.2d 233 (1970).[5]
However, while forfeiture provisions in lease-sale agreements such as the contract at issue are enforceable, they are not favored under the law. Courts are careful to scrutinize the parties’ relationship for any indication of waiver by accepting something less than strict compliance. E.g., Eurton v. Smith, 357 So.2d 324, 326 (Ala.1978). A forfeiture provision “will be upheld, nevertheless, when the lessee-vendee has actual or constructive notice that strict compliance is necessary,” and waiver of strict compliance is held to be “a question of fact.” Hamner v. Rock Mountain Lake, Inc., 451 So.2d 249, 252 (Ala.1984). It is undisputed that Mr. Hemmert routinely accepted multiple late payments from Mr. Green to cure prior breaches of their agreement, despite Mr. Green’s being consistently three or four months behind. Under these circumstances, the pertinent question is whether the trial court could have found that Mr. Green had actual or constructive notice as of January 1995 (when he last caught up his payments) that strict compliance would thereafter be required. If the trial court could have found such notice, we will presume that it did so. Transamerica, 608 So.2d at 378.
After carefully reviewing the record, we conclude that the trial court could have determined that Mr. Hemmert sufficiently communicated an intent to insist upon strict compliance by Mr. Green as of January 1995. The record reveals that Kinsey contacted Mr. Green in January 1995 and informed him that he “had better get in touch with Mr. Hemmert and get this thing paid,” that Mr. Hemmert was “upset,” was “going to foreclose,” and was “going to take the property.” Mr. Hemmert then told Mr. Green that he had a bank that was going to be handling the transaction, and that it had to be paid monthly on a regular basis. Moreover, there is evidence indicating that when Mr. Green caught his payments up in January 1995, Mr. Hemmert and Mr. Green agreed that Mr. Green would forward three months’ payments (representing January, February, and March 1995) in advance; Mr. Green did not make this payment until well into March. Accordingly, we conclude that the trial court could have found that Mr. Hemmert sufficiently communicated to Mr. Green in January 1995 that future breaches of the covenant to make monthly payments would not be tolerated.[6] We find no error with regard to this issue.
However, we must separately consider the trial court’s conclusion that “all [Mr. Green’s] payments are to be applied as rent for the use of the property.” The Hem-merts’ election of their remedy of repossession restored the parties to their positions as if no contract had existed. Absent any contractual stipulation to the contrary, all of the consideration received for the purchase of the land automatically reverts to Mr. Green as a matter of law. See Hunt v. Jones, 203 Ala. 541, 543, 84 So. 718, 720 (1919) (rescission not allowed without return of purchase money to vendee). Thus, to the extent that the parties’ contract did not alter this rule of law by allowing the Hemmerts to retain the purchase payments upon breach thereof, Mr. Green is entitled to a full refund of the purchase payments.
The contract states that upon breach by the buyer, “[t]he payments theretofore made by the Buyer pursuant to this Contract shall be credited by the Seller to the reasonable rental value of said property during the period the Buyer had the use and occupancy of said property” (emphasis added). Because the contract was drafted by the Hemmerts or by their agent, and as there is no indication that Mr. Green at the time of contracting was a sophisticated businessperson advised by counsel, we construe this quoted clause against the Hemmerts and in favor of Mr. Green. See Western Sling & Cable Co. v. Hamilton, 545 So.2d 29, 31 (Ala.1989). This clause does not unambiguously afford the Hemmerts the right to treat all of Mr. Green’s payments as rent, but allows them *397 only the right to credit the payments toward the reasonable rental value of the property over the period that Mr. Green or his daughter occupied the property.
The contract does not define what the “reasonable rental value” is for the subject property, nor is there any evidence in the record to show this value; accordingly, we conclude that the trial court erred in equating the “reasonable rental value” with the exact amount Mr. Green paid between 1987 and January 1995 toward the purchase of the property. We reverse that portion of the judgment and remand the case. On remand, the trial court is instructed to ascertain the “reasonable rental value” of the subject property for any period during which the Greens (or others claiming under them) occupied the property, and to direct the Hem-merts to return to Mr. Green any amounts he paid that exceed such “reasonable rental value.”
Because we are reversing this case and remanding on other grounds, we direct the trial court on remand to consider the Greens’ contention that the Hemmerts were required to pay certain insurance proceeds to Mr. Green. The record indicates that a barn on the subject property, which had been built before the sale to Green in 1987, was damaged by a tornado in 1991 and that an insurance policy held by the Hemmerts paid $1,300 for the loss. However, the parties’ contract imposed a duty upon Mr. Green to reimburse the Hemmerts for the premiums on this insurance, and the record reveals that Mr. Green was doing so at the time the barn was damaged.
Under Alabama law, a purchaser in possession of property under an executory land sale contract is entitled as a general rule to insurance proceeds in the event of a loss to the property before transfer of legal title, subject to the vendor’s claims for insurance premiums or for any unpaid purchase money. See Alabama Farm Bureau Mut. Ins. Serv. v. Nixon, 268 Ala. 271, 275, 105 So.2d 648, 646 (1958); Davis v. Skinner, 474 So.2d 1136, 1137-38 (Ala.Civ.App.1985). Because the Hemmerts have elected to treat the purchase as rescinded, they may not assert a claim for unpaid purchase money; moreover, the record indicates that Mr. Green reimbursed the Hemmerts for the insurance premiums at all pertinent times. However, having rescinded, the Hemmerts may recover any damages for waste on the part of the Greens and may maintain other claims necessary to a restoration of the status quo. Hammac v. Skinner, 265 Ala. 9, 13, 89 So.2d 70, 73 (1956); Tollett v. Montgomery Real Estate & Ins. Co., 238 Ala. 617, 620, 193 So. 127, 129 (1940).
While there is evidence that Mr. Green “repaired” the barn some two months before the trial of this action (i.e., some five years after the tornado), the record is unclear as to whether this “repair” fully restored the barn to its pre-sale condition. The Hemmerts are entitled to retain any portion of the insurance proceeds necessary to offset any diminution in value of the property during the Greens’ occupancy resulting from any failure on their part to restore the barn. However, the amount of insurance proceeds in excess of this diminution does not belong to the Hemmerts, but to the Greens.
Based upon the foregoing, the judgment of the trial court is affirmed in part and reversed in part, and the case is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.

. Mr. Green’s intent in acquiring the property was to use it for equipment storage, but eventually to convey it to his daughter L. Kirby Green for her use and benefit.

. Kinsey further testified that Mr. Green wanted to leave the contract in Williams’s name until a new contract in his daughter’s name could be prepared.

. While Mr. Green testified that Mr. Hemmert had agreed in January to allow him to make three monthly payments in a lump sum, due on March 15, 1995, Mr. Hemmert denied any such arrangement, testifying that the parties had in fact agreed that Mr. Green would make this payment in January.

. A portion of Alabama’s Statute of Frauds declares that "[e]very contract for the sale of lands ... or of any interest therein, except leases for a term of not longer than one year," must be in writing and signed by the party to be charged; however, this provision does not apply to contracts wherein "the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller.” Id.

. Blocker’s appears to be based in part upon the existence of a contract stipulation that time is of the essence; we note that the parties’ contract in this present case contains a similar stipulation.

. We note that "mere acceptance of payments in default under a lease-sale contract does not waive future defaults of the same nature.” Hamner, 451 So.2d at 251-52 (emphasis in original).